UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KSENIA SHNYRA, ALEXANDER REYNGOLD, and
KENNETH WALKER,

                              Plaintiffs,

- against –

STATE STREET BANK AND TRUST CO., INC.,

                              Defendant.

---

19-CV-02420 (DAB)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE**

**NIXON PEABODY LLP**
53 State Street
Boston, Massachusetts 02109
(617) 345-1000

50 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 832-7500

*Attorneys for Defendant*

Of Counsel:
 David S. Rosenthal, Esq.
 drosenthal@nixonpeabody.com

 David A. Tauster, Esq.
 dtauster@nixonpeabody.com

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF ALLEGED FACTS ........................................................................3

POINT I

DR. SHNYRA'S GENDER DISCRIMINATION CLAIMS SHOULD BE
DISMISSED IN PART ................................................................................................4

    A.    Dr. Shnyra's Hostile Work Environment Claims Are Implausible ..............4

    B.    Dr. Shnyra's Claim for Discriminatory Discharge
        Fails as a Matter of Law ...........................................................................11

POINT II

MR. REYNGOLD'S AGE DISCRIMINATION CLAIMS SHOULD BE
DISMISSED IN PART ..............................................................................................14

    A.    Mr. Reyngold Alleges No Facts Supporting the Existence of a
        Hostile Work Environment ........................................................................14

    B.    Mr. Reyngold Does Not Plausibly Allege that he was Terminated
        Because of His Age ....................................................................................16

POINT III

MR. WALKER'S CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY...........17

    A.    None of Mr. Walker's Allegations Plausibly Suggest
        Age Discrimination ...................................................................................18

    B.    Mr. Walker's Severance Payment Allegations Fail to State a Claim..........21

POINT IV

STATE STREET'S MOTION TO STRIKE SHOULD BE GRANTED .........................22

    A.    The Race Discrimination Allegations Should Be Stricken........................22

    B.    Plaintiffs' References to the WARN Acts Are
        Incorrect and Immaterial...........................................................................23

    C.    Plaintiffs' OWBPA Allegations Are Incorrect and Immaterial ................24

D.      Plaintiffs' Allegations Relating to a Prior Gender Discrimination
        Settlement Are Prejudicial and Inadmissible ............................................24

CONCLUSION ....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abdal-Rahim v. MTA N.Y.C. Transit Auth.,
    2018 U.S. Dist. LEXIS 200466 (S.D.N.Y. Nov. 27, 2018) ...................20

Alfano v. Costello,
    294 F.3d 365 (2d Cir. 2002) ...................8

Bagarozzi v. N.Y.C. Dep't of Educ.,
    2019 U.S. Dist. LEXIS 56533 (S.D.N.Y. Mar. 31, 2019) ...................6

Bliss v. MXK Rest. Corp.,
    220 F. Supp. 3d 419 (S.D.N.Y. 2016) ...................19

Boonmalert v. City of N.Y.,
    2017 U.S. Dist. LEXIS 56409 (S.D.N.Y. Apr. 12, 2017) ...................18

Brodt v. City of N.Y.,
    4 F. Supp. 3d 562 (S.D.N.Y. 2014) ...................9

DeLaurencio v. Brooklyn Children's Ctr.,
    111 F. Supp. 3d 239 (E.D.N.Y. 2015) ...................15

Dent v. United States Tennis Ass'n,
    2008 U.S. Dist. LEXIS 46971 (E.D.N.Y. June 17, 2008) ...................23, 25

Donahue v. Asia TV USA Ltd.,
    208 F. Supp. 3d 505 (S.D.N.Y. 2016) ...................22

Dotson v. City of Syracuse,
    2019 U.S. Dist. LEXIS 76797 (N.D.N.Y. May 7, 2019) ...................9

Eng v. City of N.Y.,
    2016 U.S. Dist. LEXIS 22569 (S.D.N.Y. Feb. 19, 2016) ...................16

Giordano v. Thomson,
    564 F.3d 163 (2d Cir. 2009) ...................21

Glenn v. Health,
    2017 U.S. Dist. LEXIS 106229 (W.D.N.Y. July 7, 2017) ...................4

Gonzalez v. City of N.Y.,
    2019 U.S. Dist. LEXIS 53135 (S.D.N.Y. Mar. 28, 2019) ...................5, 8, 20

iv

Grays v. SDH Educ. W., LLC,
   2017 U.S. Dist. LEXIS 54690 (S.D.N.Y. Mar. 23, 2017) ......................................................24

Haggood v. Rubin & Rothman, LLC,
   2014 U.S. Dist. LEXIS 161674 (E.D.N.Y. Nov. 17, 2014)....................................................11

Henry v. NYC Health & Hosp. Corp.,
   18 F. Supp. 3d 396 (S.D.N.Y. 2014).....................................................................................18

Lawtone-Bowles v. City of N.Y.,
   2019 U.S. Dist. LEXIS 25136 (S.D.N.Y. Feb. 15, 2019)........................................................5

Lipsky v. Commonwealth United Corp.,
   551 F.2d 887 (2d Cir. 1976)....................................................................................................25

Littlejohn v. City of New York,
   795 F.3d 297 (2d. Cir. 2015)...................................................................................................11

Lynch v. City of N.Y.,
   2018 U.S. Dist. LEXIS 52301 (S.D.N.Y. Mar. 27, 2018) ......................................................12

MacAlister v. Millenium Hotels & Resorts,
   2018 U.S. Dist. LEXIS 191775 (S.D.N.Y. Nov. 8, 2018)........................................7, 8, 10, 13

Magadia v. Napolitano,
   2009 U.S. Dist. LEXIS 30926 (S.D.N.Y. Feb. 26, 2009)........................................................9

Marcus v. Leviton Manuf. Co., Inc.,
   2016 U.S. App. LEXIS 16309 (2d Cir. Sept. 2, 2016) ....................................................11, 16

Martin v. City Univ. of N.Y.,
   2018 U.S. Dist. LEXIS 208685 (S.D.N.Y. Dec. 11, 2018) ......................................................9

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
   2013 U.S. App. LEXIS 8494 (2d. Cir. Apr. 26, 2013) ...........................................................13

Mohan v. City of N.Y.,
   2018 U.S. Dist. LEXIS 130933 (S.D.N.Y. Aug. 3, 2018)..................................................9, 15

Moore v. City of N.Y.,
   2017 U.S. Dist. LEXIS 379 (S.D.N.Y. Jan. 3, 2017).............................................................19

Murray-Dahnir v. Loews Corp.,
   1999 U.S. Dist. LEXIS 12973 (S.D.N.Y. Aug. 20, 1999) ........................................................6

Nguedi v. FRB of N.Y.,
   2017 U.S. Dist. LEXIS 89848 (S.D.N.Y. June 11, 2017)..............................................6, 12, 13

4815-8649-6920.1

Nyame v. Bronx Leb. Hosp. Ctr.,
    2010 U.S. Dist. LEXIS 33949 (S.D.N.Y. Mar. 31, 2010) .....................................................21

Oram v. SoulCycle LLC,
    979 F. Supp. 2d 498 (S.D.N.Y. 2013)..................................................................................22

Rooney v. WHM LLC,
    2017 U.S. Dist. LEXIS 124446 (S.D.N.Y. Aug. 4, 2017) .....................................................16

Rothbein v. City of N.Y.,
    2019 U.S. Dist. LEXIS 32358 (S.D.N.Y. Feb. 28, 2019) .....................................................12

Singa v. Corizon Health, Inc.,
    2018 U.S. Dist. LEXIS 3326 (E.D.N.Y. Jan. 8, 2018) ...........................................................4

Smith v. AVSC Int'l, Inc.,
    148 F. Supp. 2d 302 (S.D.N.Y. 2001)..................................................................................23

Soloviev v. Goldstein,
    104 F. Supp. 3d 232 (E.D.N.Y. 2015) ..................................................................................13

Sotomayor v. City of N.Y.,
    862 F.Supp.2d 226 (E.D.N.Y. 2012) ....................................................................................5

Stinson v. City Univ. of N.Y.,
    2018 U.S. Dist. LEXIS 95300 (S.D.N.Y. June 6, 2018).....................................................5, 10

Syed Mohammad Aftab Karim v. N.Y.C. Health & Hosps. Corp.,
    2019 U.S. Dist. LEXIS 37008 (S.D.N.Y. Mar. 6, 2019) .......................................................19

Torres v. City of N.Y.,
    2019 U.S. Dist. LEXIS 68168 (S.D.N.Y. Apr. 22, 2019).....................................................10

Wexler v. Allegion (UK) Ltd.,
    2017 U.S. Dist. LEXIS 33967 (S.D.N.Y. Mar. 9, 2017) .......................................................17

Williams v. Calderoni,
    2012 U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012) .......................................................19

Workneh v. Super Shuttle Int'l, Inc.,
    2016 U.S. Dist. LEXIS 136906 (S.D.N.Y. Sep. 30, 2016).....................................................12

4815-8649-6920.1

## PRELIMINARY STATEMENT

State Street Bank and Trust Co., Inc. ("State Street") submits the instant memorandum of law in support of its motion for an order, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), dismissing several claims asserted in the Complaint filed by Plaintiffs Ksenia Shnyra, Alexander Reyngold and Kenneth Walker on or about March 18, 2019 (the "Complaint" or "Comp.", see Exhibit A to Declaration of David A. Tauster). Specifically, State Street requests that the Court dismiss:  Count I (Dr. Shnyra's gender discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII")), the first Count IV[1] (Mr. Reyngold's age discrimination claims under the Age Discrimination in Employment Act ("ADEA")), Count V (Dr. Shnyra's gender discrimination claims under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL")), and Count VII (Mr. Reyngold's age discrimination claims under the NYSHRL and NYCHRL), to the extent that these claims are predicated upon claims of harassment, hostile work environment, or wrongful termination; and the second Count IV (Mr. Walker's ADEA age discrimination claims) and Count IX (Mr. Walker's NYSHRL and NYCHRL age discrimination claims), in their entirety.

State Street also requests that the Court enter an order striking several allegations from the Complaint, pursuant to FRCP 12(f), specifically:  the allegations in Paragraphs 109-114 pertaining to alleged race discrimination; the allegations in Paragraphs 177(b), 75(f), 296, as well as footnote 3 to Paragraph 46, pertaining to the federal and New York State Worker Adjustment and Retraining Notification ("WARN") Acts; the allegations in Paragraphs 177(a) and (e) and 178-187 pertaining to the Older Workers Benefit Protection Act ("OWBPA"); and the

---

[1] Plaintiffs' Complaint inexplicably includes two claims denoted as "Count IV."

allegations in Paragraphs 188-190 relating to State Street's settlement of a completely separate gender discrimination claim.

Plaintiffs' Complaint is the polar opposite of the "short and plain statement of the claim showing that the pleader is entitled to relief" contemplated by FRCP 8. Indeed, Plaintiffs' ninety-page Complaint is repetitive, vague and littered with completely irrelevant allegations and conclusions. This is hardly surprising, inasmuch as the Plaintiffs themselves seem confused as to what claims they are attempting to assert, such that some allegations serve to completely undermine and refute their claims for relief.

At bottom, Plaintiffs' Complaint centers upon the notion that State Street somehow came to the decision that it would eliminate the *entire* group in which Plaintiffs were employed, including employees of multiple ages and genders, solely for the purposes of retaliating against Dr. Shnyra and Mr. Reyngold for their purported complaints about gender discrimination. At the same time, Mr. Walker and Mr. Reyngold also somehow try to allege that the disbanding of ERAS was discrimination against them on the basis of age, notwithstanding that multiple younger employees (including Dr. Shnyra) were also let go when ERAS was disbanded. Similarly, Dr. Shnyra appears to be claiming that the disbanding of ERAS was an act of gender discrimination against her – again, notwithstanding that her two male co-Plaintiffs, and the other men in the group, were *also* discharged in connection with the reduction in force.

Aside from their half-baked discriminatory discharge claims, Plaintiffs make multiple allegations about "deliberate harassment" in the workplace, apparently in service of their individual hostile work environment claims based on gender or age. Yet even then, Plaintiffs fail to allege even a single remark which evidences any form of discrimination, let alone the type of workplace rife with discriminatory animus which is necessary for a hostile work environment

2

claim. Ultimately, while some of Plaintiffs' claims just barely suffice for purposes of FRCP

12(b)(6), the aforementioned claims are clearly deficient and should be dismissed.

Finally, Plaintiffs' allegations about race discrimination, the WARN Acts, the OWBPA

and State Street's settlement of a gender discrimination claim should be struck from the

Complaint. These allegations are wholly irrelevant, and asserted for no purpose other than to

inflame the prejudices of the trier of fact. Indeed, Plaintiffs are not even asserting claims under

either WARN Act, the OWBPA or for race discrimination, rendering the references to these

claims completely superfluous. Moreover, Plaintiffs' allegations about the WARN Acts and the

OWBPA are incorrect as a matter of law. Accordingly, as at least some of the Complaint will

survive this motion, these allegations should be struck before State Street is required to file its

Answer.

## STATEMENT OF ALLEGED FACTS

State Street is a global bank based in Boston. (Comp. ¶ 1). In 2013, State Street

established the Enterprise Risk Advisory Services group ("ERAS") within its State Street Global

Exchange division ("SSGX"). (Id.). Mr. Reyngold was head of ERAS, and Dr. Shnyra was his

deputy, though they effectively "held a joint leadership of the group." (Comp. ¶ 201). Mr.

Walker was hired in February 2017 to serve as ERAS' Managing Director for business

development. (Comp. ¶ 268). Mr. Walker was 62-years-old when he was hired. (Id.).

In or about January 2017, John Plansky was named the Global Head of SSGX and James

R. Lowry was named SSGX's Head of North American Operations. (Comp. ¶ 115). Both Mr.

Plansky and Mr. Lowry had praised Dr. Shnyra prior to being appointed to their new roles.

(Comp. ¶ 116). On October 3, 2017, Mr. Plansky informed the ERAS group that it was being

disbanded, effective December 1, 2017, as it was no longer "strategically relevant" to SSGX.

(Comp. ¶ 149). This reduction in force applied to all of the employees within ERAS, regardless of age or gender.

## POINT I

### DR. SHNYRA'S GENDER DISCRIMINATION CLAIMS SHOULD BE DISMISSED IN PART

Counts I and V of the Complaint set forth Dr. Shnyra's claims of gender discrimination against State Street. Dr. Shnyra alleges that State Street "discriminated against [her]" pursuant to Title VII, the NYSHRL and the NYCHRL "by treating her differently from her male coworkers, including (without limitation) in unequal compensation, failure to promote; willful creation of roadblocks to career advancement; deliberate harassment; threats of termination; and, ultimately, wrongful termination." To be certain, *all* of these claims are baseless; however, at this juncture, State Street is only seeking to dismiss Dr. Shynra's claims which are seemingly predicated upon the existence of a hostile work environment (the allegations suggesting "willful creation of roadblocks to career advancement; deliberate harassment; [and] threats of termination") as well as her claim that she was "wrongful[ly] terminat[ed]" because of gender.

### A.  *Dr. Shnyra's Hostile Work Environment Claims Are Implausible*

Dr. Shnyra has failed to plausibly allege that she was subjected to a hostile work environment on the basis of her gender. There is nothing in the Complaint which supports that Dr. Shnyra was subjected to "deliberate harassment" on any basis, let alone because of her gender. To the contrary "if [Dr. Shnyra] has any claim at all, it is a discrimination claim for disparate treatment. She cannot dress up that claim with the phrase 'hostile work environment' and thereby create a new claim for relief." Singa v. Corizon Health, Inc., 2018 U.S. Dist. LEXIS 3326, at *7 (E.D.N.Y. Jan. 8, 2018); see also Glenn v. Health, 2017 U.S. Dist. LEXIS 106229, at *11 (W.D.N.Y. July 7, 2017) ("Whereas disparate treatment claims address discrete harms such

as hiring or discharge, a hostile work environment claim analyses a workplace environment as a whole to discover whether it is abusive."). Dr. Shnyra's allegations of "harassment" amount to little more than conclusory claims that she and the ERAS group as a whole may have been subjected to criticism and heightened expectations. However, at no time does Dr. Shnyra plausibly allege that any adverse treatment was a result of her gender, and as such this claim should be dismissed. Gonzalez v. City of N.Y., 2019 U.S. Dist. LEXIS 53135, at *47 (S.D.N.Y. Mar. 28, 2019) ("Even when drawing all reasonable inferences from the [Complaint] in [plaintiff's] favor, the Court concludes that the [Complaint] is devoid of any allegations – let alone specific allegations – that [plaintiff] was subjected to 'discriminatory intimidation, ridicule, and insult' because of [his membership in a protected class].").

In order to plead a hostile work environment under federal or state law, Dr. Shnyra "must allege that [her] workplace is permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Stinson v. City Univ. of N.Y., 2018 U.S. Dist. LEXIS 95300, at *18 (S.D.N.Y. June 6, 2018). "In determining whether the conduct was sufficiently severe or pervasive, courts look at (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." Sotomayor v. City of N.Y., 862 F.Supp.2d 226, 260 (E.D.N.Y. 2012). "Isolated incidents or episodic stray remarks are not sufficiently continuous and concerted in order to be deemed pervasive." Lawtone-Bowles v. City of N.Y., 2019 U.S. Dist. LEXIS 25136, at *9 (S.D.N.Y. Feb. 15, 2019).  If a "Plaintiff fails adequately to allege that a hostile work environment was created 'because of' a protected characteristic, he [fails] to nudge his claim

5

across the line from conceivable to plausible." Nguedi v. FRB of N.Y., 2017 U.S. Dist. LEXIS 89848, at *16 (S.D.N.Y. June 11, 2017). Dr. Shnyra's claims of "harassment" appear to center on her relationships with Mr. Plansky and with Dana Hopkinson, a recruiter with State Street Human Resources, but the allegations in the Complaint are insufficient with respect to both individuals.

Dr. Shnyra fails to allege anything which plausibly supports that Mr. Plansky subjected her to a hostile work environment because she is a woman. Dr. Shnyra's allegations that Mr. Plansky imposed long working hours and difficult conditions on her and the ERAS group as a whole are insufficient to support a hostile work environment claim, particularly in the absence of anything supporting that these actions were discriminatory. See Bagarozzi v. N.Y.C. Dep't of Educ., 2019 U.S. Dist. LEXIS 56533, at *21 (S.D.N.Y. Mar. 31, 2019) ("Even if a plaintiff is able to demonstrate 'severe or pervasive' wrongdoing toward her at the workplace, it is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic."). Additionally, even if *all* of Dr. Shnyra's claims about the demanding conditions imposed on the group by Mr. Plansky were true, none of them can be construed as objectively "hostile" on any basis, let alone on a gendered basis. See Murray-Dahnir v. Loews Corp., 1999 U.S. Dist. LEXIS 12973, at *11 (S.D.N.Y. Aug. 20, 1999) (dismissing race-based hostile work environment claim based on allegations that "(1) unlike non African-American managers, he was 'compelled to work extraordinary hours without proper staffing and support'; (2) beginning in July 1998, he was subjected to a 'severe hostile environment' in that his supervisor 'ceased direct communication with [him]' and admonished him 'publicly and unjustifiably' on 'numerous occasions'; and (3) on July 28, 1998, he received a memo from his

6

supervisor containing 'illegitimate and pretextual criticism'" as "[n]one of these alleged acts rise objectively to the level of racial hostility").

Equally unpersuasive are Dr. Shnyra's allegations that, when Mr. Plansky took over SSGX, she "was no longer involved in validation of ERAS' financial projections; she was no longer included in high-level strategy meetings, and no longer had any input into the hiring and other staffing decisions or IT support issues." (Comp. ¶ 118). While Dr. Shnyra certainly alleges that these purported actions "substantially hampered Dr. Shnyra's ability to do her work," they are simply insufficient as a matter of law to constitute a hostile work environment, particularly in the absence of any substantive allegations evidencing discriminatory animus. See MacAlister v. Millenium Hotels & Resorts, 2018 U.S. Dist. LEXIS 191775, at *18 (S.D.N.Y. Nov. 8, 2018) ("Similar to adverse employment actions, being wrongly excluded from meetings, being excessively criticized, gossip about the plaintiff, refusing training, reducing job responsibilities, and changes in the office space generally do not constitute hostile work environments.").

Notably, Dr. Shnyra does not allege even a single gender-based remark by Mr. Plansky, nor anything else which is even suggests that he took any action with respect to Dr. Shnyra due to her gender. This failure is remarkable in the context of the myriad ways that Dr. Shnyra tries to hint at improper conduct by Mr. Plansky. For instance, in Paragraph 134 of the Complaint, Dr. Shnyra alleges that "Mr. Plansky intimidated and threatened Dr. Shynra with termination, demeaned her, and questioned her professional acumen and loyalty." "However, using the words 'repeatedly,' 'hostile,' and 'threatening' does not make the allegation any less conclusory" in the absence of any other indicia of discriminatory animus. MacAlister, 2018 U.S. Dist. LEXIS 191775, *19. Thus, Dr. Shnyra's "list of grievances . . . do[es] not . . . create a hostile work

environment because she does not allege any instances of ridicule or insult directed towards her protected status." Id.

Ultimately, it is apparent that Dr. Shnyra argues, at most, that Mr. Plansky was somehow mean or disrespectful to her and that this created a legally-actionable hostile work environment. However, that is incorrect as a matter of law. "[M]any bosses are harsh, unjust, and rude" so "[i]t is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination." Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002). Accepting Dr. Shnyra's allegations as true, "[t]hese facts suggest the conduct of a demanding and perhaps inconsiderate boss, but . . . hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." Gonzalez, 2019 U.S. Dist. LEXIS 53135, *49-50. Accordingly, Dr. Shnyra's allegations about Mr. Plansky are insufficient to support her hostile work environment claim.

Dr. Shnyra's allegations about Mr. Hopkinson also fail to amount to an actionable claim. Dr. Shnyra relies upon a host of vague and speculative allegations to support this claim, such as that Mr. Hopkinson "used demeaning language and threats (overt and veiled) in his communications with Dr. Shnyra and a female external recruiter, while never permitting such language in communications with male colleagues and associates" and that Mr. Hopkinson "would often withhold from Dr. Shnyra crucial information that impacted the hiring process, causing unnecessary delays; on information and belief, he never withheld such information from Dr. Shnyra's male counterparts." (Comp. ¶ 102). Yet these "entirely conclusory allegation[s are] insufficient to defeat Defendants' motion to dismiss" in the absence of factual allegations supporting that Mr. Hopkinson held any gender based animus towards Dr. Shnyra, such as

8

facially derogatory remarks or actions. <u>Dotson v. City of Syracuse</u>, 2019 U.S. Dist. LEXIS 76797, at *15 (N.D.N.Y. May 7, 2019); <u>see</u> <u>also</u> <u>Brodt v. City of N.Y.</u>, 4 F. Supp. 3d 562, 569 (S.D.N.Y. 2014) (collecting cases in which "Courts in this District have dismissed claims when a plaintiff's allegations of discriminatory motive reflected an uncomfortable workplace environment, as opposed to discriminatory animus"); <u>Magadia v. Napolitano</u>, 2009 U.S. Dist. LEXIS 30926, at *48 (S.D.N.Y. Feb. 26, 2009) ("[E]ven if there were some evidence of behavior that qualifies as harassment, not all harassment or hostile behavior is actionable under Title VII. Only hostile and harassing behavior that is motivated by race, or ethnicity, or sex, or national origin, or religion, or race, or age is actionable").

Moreover, even if there were *anything* other than Dr. Shynra's conclusory "belief" to support that Mr. Hopkinson bore any animus towards Dr. Shnyra based on her gender, there is nothing to support that his actions somehow altered the conditions of her employment, an essential element of a hostile work environment claim.  <u>See</u> <u>Mohan v. City of N.Y.</u>, 2018 U.S. Dist. LEXIS 130933, at *39 (S.D.N.Y. Aug. 3, 2018) ("even assuming Plaintiff had sufficiently alleged a discriminatory motive, her hostile work environment claim fails because the wrongdoing she alleges was not sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment"). Dr. Shnyra's interactions with Mr. Hopkison simply cannot form the basis for an actionable hostile work environment claim. <u>See</u> <u>Martin v. City Univ. of N.Y.</u>, 2018 U.S. Dist. LEXIS 208685, at *31-32 (S.D.N.Y. Dec. 11, 2018) ("Alone, each of these remarks does not amount to a hostile work environment. Considered together, they are at most isolated and sporadic incidents, which are generally insufficient to establish a hostile work environment claim.").

9

Finally, Dr. Shnyra's hostile work environment claims fail not only under Title VII and the NYSHRL, but also under the NYCHRL. "In order to prevail on a hostile work environment claim under the NYCHRL, a plaintiff must show that she was treated less well than other employees *on the basis of a protected characteristic*." Stinson, 2018 U.S. Dist. LEXIS 95300, *21 (emphasis added). Thus, while this standard is less onerous than under Title VII and the NYSHRL, a Complaint should still be dismissed if it "does not allege facts that support an inference of discriminatory motivation for Plaintiff's alleged mistreatment." Torres v. City of N.Y., 2019 U.S. Dist. LEXIS 68168, at *16 (S.D.N.Y. Apr. 22, 2019).

As addressed *supra*, even if Dr. Shnyra's Complaint plausibly alleges that she was treated less well than other employees, it fails to substantiate that this treatment was because of her gender. Dr. Shnyra offers only vague and nonspecific assertions, such as that she was "not aware of any of her male colleagues ever receiving such terrible treatment." (Comp. ¶ 130). However, Dr. Shnyra fails to actually "allege any additional facts distinguishing her experiences from that of her colleagues," which is fatal to her claims even under "the broader standard of the NYCHRL." McAlister, 2018 U.S. Dist. LEXIS 191775, *22. And, of course, Dr. Shnyra cannot plausibly allege that the adverse treatment of the ERAS team as a whole somehow affected her more acutely than the male members of the team, including Mr. Reyngold. Dr. Shnyra's failure to "plausibly allege[]" that any of the conduct described in the complaint was related to her gender "is fatal to [her] federal, state, and [NYCHRL] claims," and warrants dismissal of any claim predicated upon the existence of a hostile work environment. Stinson, 2018 U.S. Dist. LEXIS 95300, *31.

"In sum, [Dr. Shnyra's] allegations amount to nothing more than sporadic events, none of which was personally abusive, which as a matter of law do not amount to a series of abusive and

pervasive incidents of discrimination, nor do[es she] include a single extraordinary one."

Haggood v. Rubin & Rothman, LLC, 2014 U.S. Dist. LEXIS 161674, at *52 (E.D.N.Y. Nov. 17,

2014) (dismissing hostile work environment claims).  Dr. Shnyra has simply failed to allege

anything approaching a hostile work environment claim even under the NYCHRL, and as such

her hostile work environment claims should be dismissed.

    *B.   Dr. Shnyra's Claim for Discriminatory Discharge Fails as a Matter of Law*

    As with her hostile work environment claim, Dr. Shnyra has failed to set forth a claim for

discriminatory discharge under Title VII, the NYSHRL or the NYCHRL. In order to establish a

*prima facie* claim of gender discrimination pursuant to Title VII and the NYSHRL, a plaintiff

must allege that (1) she is a member of a protected class; (2) she was otherwise qualified for her

position; (3) she suffered an adverse employment action and (4) the facts surrounding the

adverse employment action suggest an inference of discriminatory motivation. See Littlejohn v.

City of New York, 795 F.3d 297, 311 (2d. Cir. 2015). "A plaintiff must supply sufficient factual

material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond

the realm of the 'conceivable' to the 'plausible.'"  Marcus v. Leviton Manuf. Co., Inc., 2016 U.S.

App. LEXIS 16309, at *4 (2d Cir. Sept. 2, 2016).

    As with her hostile work environment claims, Dr. Shnyra wholly fails to set forth a

plausible claim for discriminatory discharge, inasmuch as she cannot establish that her discharge

occurred under circumstances supporting an inference of discrimination. "Examples of

circumstances that can give rise to an inference of discrimination include the employer's

criticism of plaintiff's performance in [gender-based] degrading terms; or its invidious comments

about others in the employee's protected group; or the more favorable treatment of employees

not in the protected group; or in the sequence of events leading to the plaintiff's discharge."

Nguedi, 2017 U.S. Dist. LEXIS 89848, *13; see also Workneh v. Super Shuttle Int'l, Inc., 2016 U.S. Dist. LEXIS 136906, at *24 (S.D.N.Y. Sep. 30, 2016) (dismissing discrimination claim where plaintiff points to performance critiques but "provides no context from which it would be fair to infer that the criticism  . . .  is based on his" membership in a protected class).

Dr. Shnyra, however, does not satisfy any of these requirements. For instance, while Dr. Shnyra alleges that Mr. Plansky "yelled at [her], and berated [her], [s]he does not plead any particular conduct or remarks—by either [Mr. Plansky] or any other employee of [State Street]— that could be viewed as reflecting discriminatory animus." Nguedi, 2017 U.S. Dist. LEXIS 89848, *13. Rather, there is simply nothing in the Complaint which directly establishes any sort of discriminatory animus by anyone at State Street, other than Dr. Shnyra's own idle (and bad faith) speculation. See Rothbein v. City of N.Y., 2019 U.S. Dist. LEXIS 32358, at *27 (S.D.N.Y. Feb. 28, 2019) (holding a complaint "fails to raise a plausible inference of discriminatory motive on account of Plaintiff's sexual orientation" in part because it "is entirely devoid of any facts directly evidencing a discriminatory motive on the part of any Defendant – a homophobic slur, for instance, or any other remark or conduct relating to Plaintiff's sexuality."). Moreover, far from pleading any facts supporting that Dr. Shnyra was somehow selected for discharge because of her gender, the Complaint actually alleges that *all* of the ERAS group was selected for discharge – including Messrs. Walker and Reyngold, both of whom are men. The fact that the closing of ERAS affected both men and women alike, *based on the plain language of the Complaint*, completely refutes any inference of discrimination, and justifies dismissal of the Title VII and NYSHRL discriminatory discharge claims. See Lynch v. City of N.Y., 2018 U.S. Dist. LEXIS 52301, at *29 (S.D.N.Y. Mar. 27, 2018) (dismissing discrimination claim where

12

"Plaintiffs are of different ages, races, national origins, and genders" but allege that they were mistreated in the same way on the "basis of their race, national origin, or gender").

Dr. Shynra's NYCHRL discriminatory discharge claim fails for the same reasons. Under the NYCHRL, a plaintiff must allege "that her employer treated her less well, at least in part for a discriminatory reason." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 2013 U.S. App. LEXIS 8494, at *18-19 n.8 (2d. Cir. Apr. 26, 2013). "However, despite this broader standard, the NYCHRL does not serve as a general civility code  . . . [and the] plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive because of the plaintiff's protected characteristic." MacAlister, 2018 U.S. Dist. LEXIS 191775, *21 (internal quotation omitted). Thus, an NYCHRL claim should be dismissed if the Plaintiff fails to "plausibly allege[] that any differential treatment he suffered was caused by a discriminatory motive, even in part." Nguedi, 2017 U.S. Dist. LEXIS 89848, *21. Inasmuch as Dr. Shnyra has failed to offer any facts to support that she was selected for discharge because of her gender, even in part, her discriminatory discharge claim should fail under the NYCHRL. See Soloviev v. Goldstein, 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) (dismissing NYCHRL claim based on discriminatory discharge where the plaintiff "failed to allege that [his] termination was *caused by* a discriminatory motive on the part of his employer") (emphasis in original).

Accordingly, Counts I and V of the Complaint should be dismissed, to the extent that they sound in claims of hostile work environment or for wrongful termination.

**POINT II**

**MR. REYNGOLD'S AGE DISCRIMINATION CLAIMS**
**<u>SHOULD BE DISMISSED IN PART</u>**

The first Count IV and Count VIII of the Complaint set forth Mr. Reyngold's claims of age discrimination against State Street under the ADEA, NYSHRL and NYCHRL. Mr. Reyngold's claims effectively mirror Dr. Shnyra's, other than being based upon age rather than gender. Mr. Reyngold's claims are likewise wholly baseless, but State Street moves to dismiss only those claims predicated upon the existence of a hostile work environment (the allegations suggesting "willful creation of roadblocks to career advancement; deliberate harassment; [and] threats of termination") as well Mr. Reyngold's claim that he was "wrongful[ly] terminat[ed]" because of his age. As set forth below, Mr. Reyngold fails to plausibly allege any facts to support these age discrimination allegations, and as such these claims should be dismissed.

A.   *Mr. Reyngold Alleges No Facts Supporting the Existence of a Hostile Work Environment*

Mr. Reyngold fails to allege *any facts whatsoever* which even approach the standards applicable to a hostile work environment claim.  Despite asserting that he was subjected to "deliberate harassment" and "threats of termination," Mr. Reyngold's Complaint is devoid of any allegations which support these claims in the first instance, let alone that either was predicated upon age. Indeed, other than Mr. Reyngold's disparate treatment claims (which are not the subject of the instant motion), Mr. Reyngold's age is hardly even referenced as a factor in his Complaint. In fact, unlike Dr. Shnyra, who at least attempts (albeit unsuccessfully) to bootstrap allegations of general unpleasantness in the workplace into a hostile work environment claim, Mr. Reyngold does not even allege that he was subject to a single unkind word during his employment based on his age, let alone anything approaching overt "harassment."

4815-8649-6920.1

Rather than offer any direct or indirect evidence to substantiate his hostile work environment claim, Mr. Reyngold focuses his allegations upon clearly age-neutral grievances, such as that State Street "ignored and failed to fulfill Mr. Reyngold's request for a meeting with General Electrics for over three years" while granting other groups' requests for meetings and that State Street "denied Mr. Reyngold's repeated requests to create a designated website for ERAS" while creating websites for other groups. (Comp. ¶¶ 193-194). These types of allegations clearly cannot support a harassment or hostile work environment claim, inasmuch as there is nothing to support that they were in any way related to his age, let alone that the "workplace was permeated with discriminatory intimidation, ridicule, and insult." Mohan, 2018 U.S. Dist. LEXIS 130933, *38; see also DeLaurencio v. Brooklyn Children's Ctr., 111 F. Supp. 3d 239, 249 (E.D.N.Y. 2015) ("to state a claim, at a minimum, a plaintiff must allege facts that suggest that the complained-of conduct was motived by discriminatory animus").

Perhaps recognizing the lack of support for his claims, Mr. Reyngold instead attempts to attribute the existence of a "hostile work environment" to his purported non-membership in State Street's "Boston Club."  (Comp. ¶ 198). But even then, Mr. Reyngold offers nothing to support that he was excluded from the mythical "Boston Club" because of his age, other than conclusory assertions, let alone anything which supports that he was subjected to an environment permeated with discriminatory actions because he was not in the "Club." Moreover, Mr. Reyngold alleges that he was told that he "should consider moving to Boston to help my (*sic*) career development," (Comp. ¶ 210, fn 7), a clear indication that his non-membership in the purported "Boston Club" was based upon geography rather than his age or any other prohibited criterion. Given his utter failure to allege any facts suggesting that he was treated less well because of his age, Mr. Reyngold's age-based hostile work environment and harassment claims under Title VII,

15

the NYSHRL and the NYCHRL should be dismissed. <u>Eng v. City of N.Y.</u>, 2016 U.S. Dist. LEXIS 22569, at *8 (S.D.N.Y. Feb. 19, 2016) (dismissing age discrimination claims because "even construing her NYCHRL claims liberally, the bare factual allegations in Plaintiff's Complaint do not suggest that she was treated less well 'because of' her age or gender").

### B. *Mr. Reyngold Does Not Plausibly Allege that he was Terminated Because of his Age*

Mr. Reyngold also asserts that he was discharged due to his age. However, in order to establish a *prima facie* case of age discrimination under the ADEA or NYSHRL, Mr. Reyngold must also prove that his age was the "but-for" cause of the adverse employment action. <u>Marcus v. Leviton Mfg. Co., Inc.</u>, 2016 U.S. App. LEXIS 16309, at *3-4 (2d Cir. Sept. 2, 2016).  While this requirement is not applicable to claims under the NYCHRL, Mr. Reyngold must still plausibly allege that he was treated less well than his colleagues due to his age. <u>See</u> <u>Rooney v. WHM LLC</u>, 2017 U.S. Dist. LEXIS 124446, at *8 (S.D.N.Y. Aug. 4, 2017) (dismissing NYCHRL age discrimination claim because the "allegations are insufficient to provide even minimal support to the proposition that Defendant acted with discriminatory intent"). Because Mr. Reyngold cannot plausibly meet even the NYCHRL's minimal causation threshold, his discriminatory discharge claim should be dismissed.

Initially, Mr. Reyngold's claim that he was terminated based upon his age is wholly undermined by the point heading preceding Paragraph 227 of the Complaint, "State Street Fires Mr. Reyngold In Retaliation For His Support of Dr. Shnyra's Gender Discrimination Claims." Mr. Reyngold repeats this misstep in Paragraph 260 of the Complaint, in which he alleges that "[i]n retaliation" for his "'daring' to stand up and support" Dr. Shnyra, "State Street got rid of Dr. Shnyra and Mr. Reyngold in one fell swoop." Thus, it is apparent that Mr. Reyngold does not actually believe that he was terminated due to his age in the first instance.

Even setting apart these missteps, the fact remains that the Complaint is devoid of any allegations which would support a claim that Mr. Reyngold was discharged because of his age. Indeed, other than simply stating that he was older than 40 at all relevant times, Mr. Reyngold does not make a single other allegation even hinting at age discrimination. See Wexler v. Allegion (UK) Ltd., 2017 U.S. Dist. LEXIS 33967, at *11 (S.D.N.Y. Mar. 9, 2017) (dismissing NYCHRL age discrimination claim "supported by a single factual allegation—that he 'was 65 years old when Defendants terminated him.' That fact alone is plainly insufficient to give rise to a minimal plausible inference of age discrimination" even under the NYCHRL). Moreover, as noted in connection with Dr. Shnyra's wrongful termination claim, *all* of the ERAS group was subjected to the reduction in force, regardless of age. Indeed, Dr. Shnyra is younger than Mr. Reyngold, but yet was still covered by the reduction in force. Clearly, Mr. Reyngold has failed to sufficiently allege that his discharge had anything do with his age.

Accordingly, the first Count IV and VII of the Complaint should be dismissed, to the extent that they are sounding in claims of hostile work environment or for wrongful termination.

## POINT III

## MR. WALKER'S CLAIMS SHOULD BE DISMISSED
## IN THEIR ENTIRETY

The second Count IV and Count IX of the Complaint set forth Mr. Walker's claims of age discrimination against State Street. Mr. Walker's claims are basically identical to Mr. Reyngold's, except that Mr. Walker also alleges that he was subjected to an "unlawful refusal to remit compensation due and owing by virtue of Mr. Walker's separation." (Comp. ¶ 345). However, unlike the other Plaintiffs' claims discussed above, State Street submits that Mr. Walker's claims should be dismissed in their entirety, as even his disparate treatment claims are facially insufficient.

17

A. *None of Mr. Walker's Allegations Plausibly Suggest Age Discrimination*

Initially, while Dr. Shnyra and Mr. Reyngold adequately plead (albeit barely) their own disparate treatment claims, Mr. Walker clearly fails to plausibly allege any such treatment. For instance, while Mr. Walker alleges that he was "treat[ed] differently from his younger coworkers," (Comp. ¶ 345), he "fails to identify, let alone describe, any purported comparator," which is fatal to his disparate treatment claim. Henry v. NYC Health & Hosp. Corp., 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014). Moreover, as with Dr. Shnyra and Mr. Reyngold, Mr. Walker fails to plead any facts whatsoever which would support an inference of discriminatory animus. Mr. Walker does not allege that any supervisors made any negative comments about his age or any other facts suggestive of discrimination. As a result, Mr. Walker's age discrimination claim is clearly deficient, and should be dismissed. See Boonmalert v. City of N.Y., 2017 U.S. Dist. LEXIS 56409, at *12 (S.D.N.Y. Apr. 12, 2017) ("Plaintiff has failed to plausibly allege that the City Defendants acted with discriminatory motive, nor has he pleaded facts that permit an inference that younger similarly situated individuals received preferential treatment.").

Rather than point to any direct evidence of discriminatory animus, or indeed of any animus whatsoever towards himself, Mr. Walker instead predicates his *entire* claim on one allegation – that his hiring was delayed by seventy-five days, and that, "[o]n information and belief, this substantial delay at the hands of Dana Hopkinson was motivated solely by Mr. Walker's age." (Comp. ¶ 300). However, much like Dr. Shnyra's attempts to tar Mr. Hopkinson's reputation, there is absolutely nothing in the Complaint which serves to substantiate Mr. Walker's "information and belief" regarding Mr. Hopkinson's alleged motives. Indeed, "allegations 'upon information and belief' fail to state a claim when a plaintiff does not support

them with a statement of facts that create a plausible inference of their truth." <u>Moore v. City of N.Y.</u>, 2017 U.S. Dist. LEXIS 379, at *69 (S.D.N.Y. Jan. 3, 2017) (collecting cases).

Here, Mr. Walker does not even attempt to provide any factual support for this "information and belief." To the contrary, Mr. Walker instead attempts to focus upon Mr. Hopkinson's alleged "propensity for disparate detrimental treatment of female colleagues," without providing any substance for the notion that Mr. Hopkinson bore any unlawful animus towards Mr. Walker (or anyone else) on the basis of his age. Not only are these allegations implausible, as discussed above, but they do not provide any support for Mr. Walker's age discrimination claim. <u>See</u> <u>Bliss v. MXK Rest. Corp.</u>, 220 F. Supp. 3d 419, 423 (S.D.N.Y. 2016) ("Kotsonis's alleged derogatory comments about LGBT persons and African Americans, however loathsome, are irrelevant to her gender discrimination claims; there is nothing to suggest that they created a hostile work environment because of Bliss's gender"). Thus, Mr. Walker's allegations predicated "'upon information and belief' are insufficient to raise an inference of discrimination and do not provide at least minimal support for the proposition that [State Street] was motivated by discriminatory intent." <u>Syed Mohammad Aftab Karim v. N.Y.C. Health & Hosps. Corp.</u>, 2019 U.S. Dist. LEXIS 37008, at *17 (S.D.N.Y. Mar. 6, 2019).

Ultimately, Mr. Walker's allegations can be simply summarized – Mr. Walker was 62 years old during the relevant time frame (including at the time he was hired), and therefore everything which happened to him was *because* he was 62 years old during the relevant time frame. It is, however, beyond cavil that such conclusory assumptions are nothing more than a false syllogism, which is insufficient to satisfy Mr. Walker's *prima facie* burden. <u>See</u> <u>Williams v. Calderoni</u>, 2012 U.S. Dist. LEXIS 28723, at *17 (S.D.N.Y. Mar. 1, 2012) (providing that "it is hornbook law that the mere fact that something bad happens to a member of a particular

[protected] group does not, without more, establish that it happened *because* the person is a member of that [protected] group" (emphasis in original)). Mr. Walker's failure to allege any facts which even hint at a discriminatory purpose behind any of State Street's actions warrants dismissal of his claims in their entirety. Abdal-Rahim v. MTA N.Y.C. Transit Auth., 2018 U.S. Dist. LEXIS 200466, at *9 (S.D.N.Y. Nov. 27, 2018) ("Essentially, plaintiff simply alleges that he believes that he was discriminated against, which is not enough under Iqbal and Twombly.").

Finally, it should be noted that, much like Mr. Reyngold, Mr. Walker does not even appear to actually believe that his discharge was motivated by his age based upon the allegations in the Complaint. To the contrary, Mr. Walker explicitly alleges that he "consider[s] his termination and the sudden dissolution of the entire ERAS group . . . *as a culmination of [the] egregious plotting and vendetta by senior executives against Mr. Reyngold and Dr. Shnyra*." (Comp. ¶ 311) (emphasis added). Similarly, Mr. Walker alleges in Paragraph 307 of the Complaint that he has come "to the inescapable conclusion that State Street's sudden decision to dismantle ERAS was not motivated by business reasons, *but driven by the Bank's desire to cover up its wrongful termination of those two senior executives who founded and built ERAS from the ground up*." (emphasis added). Inasmuch as Mr. Walker himself alleges that he was discharged due to State Street's animus against Mr. Reyngold and Dr. Shnyra, his Complaint cannot be read as plausibly alleging that he was discharged due to his age. See Gonzalez, 2019 U.S. Dist. LEXIS 53135, *56 (dismissing discrimination claim under NYCHRL because plaintiff "fails to allege facts that lead to the inference that his [membership in the protected class] was a motivating factor for the allegedly discriminatory conduct."). Accordingly, Mr. Walker's discrimination claims should be dismissed in their entirety.

4815-8649-6920.1

B. *Mr. Walker's Severance Payment Allegations Fail to State a Claim*

Mr. Walker's final claim is that State Street "unlawful[ly] refus[ed] to remit compensation due and owing by virtue of Mr. Walker's separation." (Comp. ¶ 345). This allegation appears to relate to Mr. Walker's claim that State Street purportedly miscalculated his "Special Severance Payment ('SSP'), under the express terms of State Street's severance policies." (Comp. ¶ 284). However, there is absolutely nothing in Mr. Walker's recitation of the "facts" underlying these allegations which supports that they were in any way related to his age. To the contrary, Mr. Walker's entire claim about the SSP is related to his own disagreement with the way that State Street applied the language of the policy, *to wit*, in its definition of the "business unit" for which the severance payment would be calculated. (Comp. ¶ 288-291).

This is not a discrimination claim, but rather an ERISA claim, and an inadequately plead one at that. "To prevail under [ERISA], a plaintiff must show that (1) the plan is covered by ERISA, (2) plaintiff is a participant or beneficiary of the plan, and (3) plaintiff was wrongfully denied severance pay owed under the plan". Giordano v. Thomson, 564 F.3d 163, 168 (2d Cir. 2009). Mr. Walker makes no efforts to actually plead this type of claim. Rather, the sole element which Mr. Walker pleads is that he was denied severance pay which was "due and owing," but even then he has only done so in conclusory fashion. See Nyame v. Bronx Leb. Hosp. Ctr., 2010 U.S. Dist. LEXIS 33949, at *18 (S.D.N.Y. Mar. 31, 2010) ("Plaintiff's conclusory statements are insufficient to make out a plausible claim under ERISA").

Even separate and apart from the fact that Mr. Walker's severance pay allegations are clearly nothing more than a failed ERISA claim, the fact remains that Mr. Walker has offered nothing to support that the SSP calculation was in any way related to his age. Mr. Walker does not even attempt to allege, for instance, that younger employees within ERAS (or elsewhere in State Street) had their SSP calculated on a different basis. Similarly, Mr. Walker does not allege

4815-8649-6920.1

that anyone responsible for calculating the SSP bore him (or anyone else) unlawful animus based upon age. And, indeed, any such allegation would be contradicted by Plaintiffs' claim in Paragraph 75(D) of the Complaint that the miscalculation of the SSP "was not restricted to ERAS, but has been endemic to employees terminated across the Bank." As with the rest of Mr. Walker's claims, the SSP allegations are nothing more than an assertion that, because he was 62 years old, anything bad that happened to him must have been because he was 62 years old. That type of allegation is simply insufficient for any of his claims to survive a motion to dismiss.

Accordingly, the second Count IV and Count IX of the Complaint should be dismissed in their entirety.

## POINT IV

## STATE STREET'S MOTION TO STRIKE
## <u>SHOULD BE GRANTED</u>

In addition to seeking dismissal of the above referenced claims, State Street also requests that the Court strike several paragraphs from the Complaint. FRCP 12(f) permits the Court to "strike from a pleading  . . .  any redundant, immaterial, impertinent, or scandalous matter." "Although motions to strike are generally disfavored, allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones. Stated differently, a court may strike matter from a complaint where its material is prejudicial." <u>Oram v. SoulCycle LLC</u>, 979 F. Supp. 2d 498, 511 (S.D.N.Y. 2013).

*A. The Race Discrimination Allegations Should Be Stricken*

Paragraphs 109-112 of the Complaint purportedly detail a history of race based discrimination by Mr. Hopkinson, specifically relating to the "loss of employment for Keith Dondl." These allegations serve absolutely no purpose in this action, particularly given that none of the Plaintiffs assert claims for race discrimination. See <u>Donahue v. Asia TV USA Ltd.</u>, 208 F.

Supp. 3d 505, 517 (S.D.N.Y. 2016) ("Because evidence of sexual harassment of other employees is wholly unrelated to Donahue's claims of national origin and age-based hostile work environment claims, paragraphs 37-39 shall be stricken"); see also Smith v. AVSC Int'l, Inc., 148 F. Supp. 2d 302, 317 (S.D.N.Y. 2001) (granting motion to strike unrelated harassment allegations because "allegations about [the harassor's] behavior toward other employees who were not also older white men are not relevant to any of [plaintiff's] claims."). Moreover, no factual basis is proffered for these allegations other than "information and belief," which (as noted above) is insufficient for this type of allegation to even withstand a motion to dismiss. Plaintiff's allegations about purported race discrimination "are of course inflammatory and . . . entirely unnecessary to the statement of [plaintiffs'] claims, and would be prejudicial if ever reviewed by a jury." Dent v. United States Tennis Ass'n, 2008 U.S. Dist. LEXIS 46971, at *13 (E.D.N.Y. June 17, 2008). Thus, these allegations should be stricken from the Complaint.

### B.  Plaintiffs' References to the WARN Acts Are Incorrect and Immaterial

The references in the Complaint to the WARN Acts should also be stricken from the Complaint. Initially, as with the race discrimination allegations, the claims regarding the WARN Act are completely irrelevant to the instant proceeding. Plaintiffs are not even asserting a claim under either WARN Act, and the insertion of these allegations into the complaint serves no purpose other than to attempt to inflame the trier of fact.

Moreover, Plaintiffs' references to the WARN Acts are not even correct as a matter of law. Plaintiffs' WARN Act assertions effectively amount to a claim that State Street "fail[ed] to provide ERAS employees with 90-day notice of their layoff in violation of" the WARN Acts, (Comp. ¶ 177(b)), and "filed no notices with the New York State Department of Labor" pursuant to the New York State WARN Act. (Comp. ¶ 75(F)). However, Plaintiffs do not allege that they

were a part of a reduction in force which affected at least 25 employees, comprising 33% of State Street's workforce at a single site of employment, as required to constitute a "mass layoff" under the New York WARN Act, let alone the 50 employees required by the federal WARN Act. See N.Y. Lab. Law § 860-a(4); 29 U.S.C.S. § 2101(a)(3). In fact, by the very allegations in the Complaint, the ERAS group (the only group at issue) consisted of, at most, 18 employees. Thus, State Street had no obligation to provide notice (or take any other actions) under either WARN Act. Accordingly, the WARN Act allegations should be struck.

C.  *Plaintiffs' OWBPA Allegations Are Incorrect and Immaterial*

Plaintiffs' OWBPA allegations should be struck for a similar reason to their WARN Act allegations. While Plaintiffs make a variety of speculative claims about the calculation of Mr. Walker's severance benefit, they have not set forth any facts which suggest that there was a violation of the OWBPA.  Moreover, "OWBPA does not establish a cause of action for age discrimination and is irrelevant here." Grays v. SDH Educ. W., LLC, 2017 U.S. Dist. LEXIS 54690, at *13 (S.D.N.Y. Mar. 23, 2017). The OWBPA would only be relevant to this matter to the extent that Mr. Walker or Mr. Reyngold were alleging that they were not provided the correct disclosures and review period in connection with a release of claims which they executed. Here, however, neither Mr. Walker nor Mr. Reyngold actually executed a release, so there is no reason for the Complaint to reference the OWBPA. Accordingly, as with the WARN Act allegations, the claims under the OWBPA serve no purpose other than to cast irrelevant aspersions on State Street, and as such these allegations should be stricken from the Complaint.

D.  *Plaintiffs' Allegations Relating to a Prior Gender Discrimination Settlement Are Prejudicial and Inadmissible*

Finally, Paragraphs 188-190 of the Complaint purportedly detail prior instances of gender based pay discrimination by State Street. However, these allegations solely relate to State

Street's settlement of allegations of discrimination, rather than to any actual adjudication of liability against State Street. In this regard, Plaintiffs' assertion in Paragraph 188 of the Complaint that "[n]or was this the first time State Street had discriminated against its female employees" based upon this settlement is completely prejudicial and should be struck.

"Settlement agreements, even those approved by court order, have served as targets of successful motions to strike." <u>Dent</u>, 2008 U.S. Dist. LEXIS 46971, *5. As the Second Circuit has recognized, these agreements are "not the result of an actual adjudication of any of the issues" and "cannot be used as evidence in subsequent litigation between that corporation and another party." <u>Lipsky v. Commonwealth United Corp.</u>, 551 F.2d 887, 893 (2d Cir. 1976). Striking the allegations regarding the prior settlement is particularly appropriate here as Plaintiffs are explicitly attempting to use this settlement to establish the truth of the matter, e.g. that State Street has previously engaged in gender based discrimination. However, courts routinely hold, particularly in the context of discrimination settlements, that such agreements are not admissible "as proof of the truth of the matters that led to the settlement agreement, i.e, that the defendants practiced discrimination in the past." <u>Dent</u>, 2008 U.S. Dist. LEXIS 46971, *7-8 (collecting cases and striking allegations relating to prior discrimination settlement). Inasmuch as the settlement allegations add nothing of value to the Complaint other than to try and prejudice the trier of fact, they should be struck.

## **CONCLUSION**

For the foregoing reasons, State Street's motion should be granted in its entirety, plus such other and further relief as the court deems just and proper.

Dated: June 6, 2019                                   NIXON PEABODY LLP
      Jericho, New York                        _____*/s/ David A. Tauster*_____
                                     David A. Tauster

4815-8649-6920.1