Mikhail Ratner, Esq. (MR-6264)
Peter Roldan, Esq. (PR-9999)
EMERGENT LLP
*Attorneys for Plaintiffs*
48 Wall Street, 11th Floor
New York, NY 10005
Tel: (212) 498-9816
Email: mikhail@emergent.law
Email: peter@emergent.law

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KSENIA SHNYRA, ALEXANDER REYNGOLD, and KENNETH WALKER,<br><br>Plaintiffs,<br><br>-against-<br><br>STATE STREET BANK AND TRUST CO., INC.,<br><br>Defendant. | Case No.:  19-cv-02420 (DAB) |

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTIONS TO DISMISS AND STRIKE

Of counsel:   Mikhail Ratner, Esq.
              Peter Roldan, Esq.

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ...................................................................... 1

**ARGUMENT** ................................................................................................... 2

    POINT I. THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS ............ 2

      A.   Ksenia Shnyra States a Claim for Hostile Work Environment ..................................... 2

      B.   Dr. Shnyra States a Claim for Discriminatory Discharge ............................. 8

      C.   Alexander Reyngold States a Claims for Hostile Work Environment ........................... 9

      D.   Mr. Reyngold States a Claim for Wrongful Termination due to Age ......................... 11

      E.   Kenneth Walker States a Claim for Age Discrimination ............................. 12

    POINT II. THE COURT SHOULD DENY DEFENDANT'S MOTION TO STRIKE .......... 13

      A.   Mr. Hopkinson's History Of Racial Discrimination

         Has Bearing On Claims In This Case ........................................................ 14

      B.   Allegations Regarding WARN Act And

         OWBPA Deficiencies Have Bearing On This Case ................................... 15

      C.   State Street's Settlement Of Prior Gender

         Discrimination Claims Can Stay In The Complaint .................................. 16

    POINT III. IN THE ALTERNATIVE, THE COURT SHOULD

    GRANT PLAINTIFFS LEAVE TO AMEND THEIR PLEADINGS ..................................... 18

    **CONCLUSION** ............................................................................................. 20

## TABLE OF AUTHORITIES

CASES:

*Acco, Ltd. v. Rich Kids Jean Corp.*,
  2016 WL 3144053 (S.D.N.Y. Apr. 11, 2016)............................................................... 17
*Alfano v. Costello*,
  294 F.3d 365 (2d Cir. 2002)............................................................................................ 6
*Aulicino v. New York City Dep't of Homeless Servs.*,
  580 F.3d 73 (2d Cir. 2009)............................................................................................. 3
*Brodt v. City of N.Y.*,
  4 F. Supp. 3d 562 (S.D.N.Y. 2014) ................................................................................ 7
*Christopher v. Laidlaw Transit Inc.*,
  899 F. Supp. 1224 (S.D.N.Y. 1995) ............................................................................... 2
*Cruz v. Coach Stores, Inc.*,
  202 F.3d 560 (2d Cir. 2000)......................................................................................... 14
*Dent v. United States Tennis Ass'n*,
  2008 WL 2483288 (E.D.N.Y. June 17, 2008) .............................................................. 15
*Donahue v. Asia TV USA Ltd.*,
  208 F. Supp. 3d 505 (S.D.N.Y.  2016) ......................................................................... 15
*Galper v. JP Morgan Chase Bank, N.A.*,
  802 F.3d 437 (2d Cir. 2015)........................................................................................... 2
*Glenn v. Kaleida Health*,
  2017 WL 3727313 (W.D.N.Y. July 7, 2017).................................................................. 6
*Gonzalez v. City of N.Y.*,
  2019 WL 1407317, (S.D.N.Y. March 28, 2019) ............................................................ 7
*Gonzalez v. City of New York*,
  377 F. Supp. 3d 273 (S.D.N.Y. 2019) ............................................................................ 5
*In re OSG Sec. Litig.*,
  12 F. Supp. 3d 619 (S.D.N.Y. 2014) ........................................................................... 17
*Kleinman v. Fashion Inst. of Tech.*, "
  2017 WL 3016940 (S.D.N.Y. July 14, 2017) ................................................................ 3
*Leon v. Rockland Psychiatric Ctr.*,
  232 F. Supp. 3d 420 (S.D.N.Y. 2017) ............................................................................ 2
*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d. Cir 1976).......................................................................................... 17
*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015).......................................................................................... 8
*Martin v. City Univ. of N.Y.*,
  2018 WL 6510805 (S.D.N.Y. Dec. 11, 2018) ............................................................... 7
*McGee v. Dunn*,
  940 F. Supp. 2d 93 (S.D.N.Y. 2013). ........................................................................... 18
*Mihalik v. Credit Agircole Chevereux America, Inc.*,
  715 F.3d 102 (2d Cir. 2013).......................................................................................... 12

*Murray-Dahir v. Lowes Corp.,*
  1999 WL 639699 (S.D.N.Y. Aug. 23, 1999) ................................................................ 6
*Nardi v. Stevens Inst. of Tech.,*
  60 F. Supp. 2d 31 (E.D.N.Y. 1999) .......................................................................... 12
*Nguedi v. Fed. Reserve Bank of N.Y.,*
  2017 WL 2557263 (S.D.N.Y. June 11, 2017) ............................................................ 5
*Nguyen v. FXCM Inc.,*
  364 F. Supp. 3d 227 (S.D.N.Y. 2019) ...................................................................... 17
*Patane v. Clark,*
  508 F.3d 106 (2d Cir. 2007) ..................................................................................... 3
*Quanta Specialty Lines Ins. Co. v. Inv'rs Capital Corp.,*
  2008 WL 1910503 (S.D.N.Y. Apr. 30, 2008) ........................................................... 14
*Raymond v. City of New York,*
  317 F. Supp. 3d 746 (S.D.N.Y. 2018) ...................................................................... 18
*Rolph v. Hobart & William Smith Colleges,*
  271 F. Supp. 3d 386 (W.D.N.Y. 2017) ..................................................................... 10
*Rooney v. WHM LLC,*
  2017 WL 3482066 (S.D.N.Y. Aug. 4, 2017) ............................................................ 12
*Singa v. Corizon Health, Inc.,*
  2018 WL 324884 (E.D.N.Y. Jan. 8, 2018) ................................................................. 5
*Sirota v. Welbilt Appliance, Inc.,*
  840 F. Supp. 11 (E.D.N.Y. 1994) ............................................................................ 11
*Yusuf v. Vassar Coll.,*
  35 F.3d 709 (2d Cir. 1994) ...................................................................................... 10

ii

## PRELIMINARY STATEMENT

Defendant State Street Bank and Trust Co., Inc. ("Defendant" or "State Street") repeatedly mistreated and harassed one of its start managers, plaintiff Dr. Ksenia Shnyra ("Shnyra") and otherwise created truly unbearable working conditions for Dr. Shnyra to try to get her to quit her job.  When that did not work, State Street hastily disbanded *an entire department* headed by Dr. Shnyra—all to cover up its wrongful termination of her employ. Under this cover, State Street also wrongfully terminated two other senior managers, plaintiffs Alexander Reyngold  ("Reyngold") and Kenneth Walker ("Walker") because of their age.

At this early stage, the Court must accept these truly remarkable allegations as true and make all inferences in Plaintiffs' favor.  Seen in this highly favorable light, the Complaint clearly states claims for hostile work environment for both Dr. Shnyra and Mr. Reyngold; it also sufficiently states claims of age discrimination for both Mr. Reyngold and Mr. Walker.  Straining to dismiss the foregoing claims, State Street, simply sidesteps this high barrier—by  conveniently glossing over or, worse yet, completely misstating the detailed allegations in the Complaint. Accordingly, the Court should deny that part of State Street's motion seeking dismissal of the claims referenced therein.

 The part of Defendant's motion that seeks to strike certain allegations in the Complaint is also without merit and should be denied.  The allegations State Street apparently finds so "offensive" all have some bearing on Plaintiffs' claims, under a liberal standard of review that accounts for the courts disfavoring motions to strike.

Even if the Court was to find any of Plaintiffs' pleadings somehow insufficient or prejudicial (and they are not), it should grant Plaintiffs leave to amend their initial Complaint.

## ARGUMENT

### POINT I
### THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS

*Standard of Review*

It is well-settled law (which State Street's counsel conveniently ignores) that, in considering a motion to dismiss under Rule 12(b)(6), this court "is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015); *see also Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 426 (S.D.N.Y. 2017).  In this regard, as one court elaborated:

> The trial court's role is to appraise the legal merits of the complaint and not to weigh the evidence which might be introduced at trial. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Finally, the trial court should grant a Rule 12(b)(6) motion only if is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

*Christopher v. Laidlaw Transit Inc.*, 899 F. Supp. 1224, 1226 (S.D.N.Y. 1995) (quotations and citations omitted).

Under this liberal pleading standard, all three Plaintiff state claims that must survive this motion to dismiss and be allowed to proceed through discovery to trial.  In particular, and contrary to Defendant's arguments, (1) both Dr. Shnyra and Reyngold state claims, *inter alia*, for hostile work environment and discriminatory discharge; (2) Reyngold, separately, states claim for age discrimination and (3) Walker, likewise, states a claim for age discrimination.

#### A.    Ksenia Shnyra States a Claim for Hostile Work Environment

To state a claim for a hostile work environment, Dr. Shnyra needed merely to "plead facts that would tend to show that the complained of conduct: (1) is objectively severe or

pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). Moreover, "[w]hether the challenged conduct is sufficiently severe or pervasive "depends on the totality of the circumstances[, and] The Supreme Court established a 'non-exclusive' list of factors, to consider in this regard: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a 'mere offensive utterance'; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009).

Notably, at this early stage, Dr. Shnyra "need only plead facts sufficient to support the conclusion that she was faced with harassment ... of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Kleinman v. Fashion Inst. of Tech.*, 2017 WL 3016940, at *10 (S.D.N.Y. July 14, 2017) In other words, plaintiff "need not establish every element of a *prima facie* hostile work environment claim to survive a motion to dismiss. Rather, a complaint need only give plausible support to a minimal inference of discriminatory motivation." *Id.*

State Street seeks to dismiss Dr. Shnyra's hostile work environment claim by arguing, in essence, that she is complaining about difficult and demanding bosses. According to Defendant, "Dr. Shnyra's allegations of 'harassment' amount to little more than conclusory claims that she and the ERAS group as a whole may have been subjected to criticism and heightened expectations." *See* Memorandum of Law in Support of Defendant's Motion to Dismiss and Motion to Strike ("Pl. Memo of Law"), at p. 5.

3

This grossly mischaracterizes and minimizes Dr. Shnyra's extensive factual allegations of deliberate harassment.  As detailed in the Complaint:

- Dr. Shnyra faced continued mistreatment from an HR officer, Dana Hopkinson, so severe that she was forced to make a discrimination complaint against Mr. Hopkinson in July of 2017.  *See* Complaint ("Compl."), at ¶¶ 100-114.

- In or around the summer of 2017, Defendant's management, led by John Plansky, concocted a scheme to drive Dr. Shnyra out of State Street by, among other things, (a) creating a fictitious "pre-audit" and otherwise piling Dr. Shnyra with wholly unnecessary "busywork"; (b) excluding Dr. Shnyra from critical decision-making processes; (c) demanding that she work excruciating 15-20 hour workdays to meet unrealistic deadlines, and (d) threatening to fire Dr. Shnyra. *See* Compl., at ¶¶ 115-147.

- Mr. Plansky, in the course of several telephonic and in-person meetings that took place in September of 2017, attacked and berated Dr. Shnyra, and threatened to fire her.  These attacks took place in the presence of Dr. Shnyra's immediate supervisor and close colleague, Alexander Reyngold.  Moreover, the attacks were so severe and stressful that Dr. Shnyra suffered a stress-induced anaphylactic shock that required immediate medical treatment.  *See id.*, ¶¶ 133-144.

- Ultimately, Dr. Shnyra was terminated from State Street's employ pursuant to a scheme designed to cover up precisely the aforementioned harassment and mistreatment at the hands of Defendant's management.  *See id.*, at ¶¶ 148-177.

These detailed allegations plainly establish that the harassment directed at Dr. Shnyra was severe, both objectively and as perceived by Dr. Shnyra; it was humiliating and degrading; it

4

substantially interfered with Dr. Shnyra's work and inflicted a terrible toll on her psychosocial and physical health.   In other words, this is not a case of a stray remark uttered by a boorish boss or an isolated incident prompted by demanding work environment.

Indeed, Dr. Shnyra's thorough allegations of severe harassment stand in stark contrast in, and are easily distinguished from, many of the cases cited by Defendant in its brief.

In *Singa v. Corizon Health, Inc.*, 2018 WL 324884 (E.D.N.Y. Jan. 8, 2018), plaintiff's hostile environment claim hinged on a single allegation that her immediate supervisor "was rude to her by not greeting her on her first day." *See id.*, at \*3.  Similarly, in *Gonzalez v. City of New York*, 377 F. Supp. 3d 273 (S.D.N.Y. 2019), the district court held that "[b]eing asked once to move boxes in the workplace—untethered to any other specific improper conduct targeting his protected status—[did] not rise to the requisite level of severity." *See id.*, 377 F. Supp. 3d at 277. In *Stinson v. City Univ. of N.Y.*, 2018 WL 2727886 (S.D.N.Y. June 6, 2018), the court found that (a) allegations (off-color jokes, pranks, name-calling) were "neither severe nor pervasive" to sustain hostile work environment claim and (b) plaintiff in that case had failed to connect the alleged misconduct to his protected status (race and disability). *See id.*, at \*12.  *Lawtone-Bowles v. City of N.Y.,* 2019 WIL 652593 (S.D.N.Y. Feb. 15, 2019) involved "a little more than a few stray remarks" and extremely vague allegations that colleagues harassed plaintiff for "being a woman and disabled." *See id.*, at \*4.  In *Nguedi v. Fed. Reserve Bank of N.Y.*, 2017 WL 2557263 (S.D.N.Y. June 11, 2017), the court found that plaintiff's claim of hostile work environment was "unsupported by a single example." *See id.*, at \*6.

Unlike the pleadings in the above-referenced cases, the Complaint here is replete with specific examples of harassment that ranged far beyond mere "stray remark" or "rude" behavior; and was clearly tied to Dr. Shnyra's gender and her prior complaints of gender discrimination.

5

Notably also, in *Singa*, *Stinson*, and *Lawtone-Bowels*, *supra*, plaintiffs had histories of reprimands and complaints against them, noted by the courts in those cases. By contrast, here, Dr. Shnyra had had a stellar record as an employee and manager throughout her tenure at State Street: far from anyone complaining about Dr. Shnyra, she was consistently singled out for praise, even during the very times Dr. Shnyra and her group, ERAS, were supposedly subject to criticism, according to Defendant's brief.

Indeed, in *Glenn v. Kaleida Health*, 2017 WL 3727313 (W.D.N.Y. July 7, 2017), another case cited by Defendant, the trial court refused to dismiss a hostile environment claim, (a) citing numerous allegations the court correctly interpreted in light favorable plaintiff in that case, and (b) noting that even a single incident of severe mistreatment could support a hostile environment claim. *See id*., at *5-6; *see also Murray-Dahir v. Lowes Corp.,* 1999 WL 639699, at * 3 (S.D.N.Y. Aug. 23, 1999) ("even a single episode of harassment, if severe enough, may create a hostile or abusive environment").

State Street's assertion that the harassment, somehow, was not directed at Dr. Shnyra *as a woman* ignores the basic facts of the Complaint. The harassment campaign started in earnest after Dr. Shnyra had lodged a gender discrimination complaint against Dana Hopkinson. John Plansky had singled out and attacked Dr. Shnyra precisely because she was a woman; and he did so in the presence of Dr. Shnyra's immediate supervisor and colleague, Alexander Reyngold. Notably, the persistent attacks and harassment caused Dr. Shnyra to suffer severe psychological trauma that ultimately resulted in her seeking immediate medical treatment..

The additional cases cited by State Street refute its own arguments. *Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002) was a decision rendered after a trial, not at this early stage, in which the appellate court, moreover, held that even apparently gender-neutral actions could be admitted

into evidence to prove hostile work environment claim.  *See id.*, 294 F. 3d. at 376.  And if "hostile work environment claims are meant to protect individuals from abuse and trauma that is severe," as they should, Dr. Shnyra's case certainly vindicates this important goal:  the attacks and harassment were so severe that they, literally, drove her to seek extensive medical care.  *See Gonzalez v. City of N.Y.*, 2019 WL 1407317, at * 5 (S.D.N.Y. March 28, 2019).

Dana Hopkinson's mistreatment of Dr. Shnyra, particularly when seen in "totality of circumstances" as it must, was part of a pattern of persistent harassment.  Mr. Hopkinson's actions were definitely not "isolated and sporadic incidents" that created "an uncomfortable workplace" for Dr. Shnyra.  *See Martin v. City Univ. of N.Y.*, 2018 WL 6510805 (S.D.N.Y. Dec. 11, 2018); *Brodt v. City of N.Y.*, 4 F. Supp. 3d 562 (S.D.N.Y. 2014).  As alleged in the Complaint, Mr. Hopkinson repeatedly demeaned Dr. Shnyra and withheld from her crucial information with respect to hiring—information that went to the core of Dr. Shnyra's responsibilities as Head of Execution at ERAS.  *See* Compl., at ¶¶ 100-103.  Mr. Hopkinson never allowed that type of misconduct with respect to his male colleagues.  Notably, the attacks and mistreatment of Dr. Shnyra escalated right after she lodged a gender discrimination complaint against Mr. Hopkinson, bolstering the claim that what happened to Dr. Shnyra was a pattern of escalating harassment.

In sum, the detailed and extensive factual allegations in the Complaint plainly support Dr. Shnyra's hostile work environment claim.  Dr. Shnyra faced persistent, escalating attacks and harassment that demeaned and humiliated her before her colleagues; interfered with her core work responsibilities; and caused trauma so severe that she required  extensive medical treatment..  These were not merely difficult bosses and demanding work, as State Street would have this Court believe.

Dr. Shnyra has also meet the "less onerous" standard (as readily admitted by Defendant's counsel) for pleading hostile work environment claim under the New York City Human Rights Law ("NYCHRL").[1]  Dr. Shnyra has clearly shown that she was "treated less well than other employees on the basis of a protected characteristic," *i.e.* her gender. *See Stintson, supra*, 2018 WL 2727886, at * 10.

 For all the foregoing reasons, the Court should deny that portion of Defendant's motion that seeks dismissal of Dr. Ksenia Shnyra's hostile work environment claims, contained in Counts I and V of the Complaint.

**B.**      **Dr. Shnyra States a Claim for Discriminatory Discharge**

State Street's assertion that Dr. Shnyra has failed to state a claim for discriminatory discharge is wholly without merit.

Notably, to begin with, State Street's counsel completely misstates the well-established liberal pleading standard promulgated by the Second Circuit in *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015).  Here is what the appellate court actually stated (and not the abbreviated summary culled by State Street's lawyers):

> [A]t the initial stage of the litigation—prior to the employer's coming forward with the claimed reason for its action—the plaintiff does not need substantial evidence of discriminatory intent. If she makes a showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation, then she has satisfied the *prima facie* requirements and a presumption of discriminatory intent arises in her favor, at which point the burden of production shifts to the employer, requiring that the employer furnish evidence of reasons for the adverse action.

---

[1] The standards for pleading hostile work environment claims under federal Title VI and the New York State Human Rights Law ("NYSHRL") are substantively identical.  *See, e.g., Aulicino, supra*, 580 F.3d at 80.

*Littlejohn, supra*, 795 F.3d at 311 (emphasis in the original).

Dr. Shnyra's allegations plainly meet this liberal test here: (1) she  is a female employee and manager who (2) was eminently qualified for her position and (3) her termination was clearly an "adverse employment action."  Indeed, State Street does not—and cannot—challenge the first three prongs of the *Littlejohn* standard.

State Street's sole argument, with respect to the fourth prong, is that Dr. Shnyra, somehow, has failed to show that her termination was motivated by discriminatory animus.  This contention ignores the central theme of the Complaint, as it relates to Dr. Shnyra.  That is, State Street had decided to disband an entire group led by Dr. Shnyra and then quietly hire back or relocate some of those who lost their job (but not Dr. Shnyra and a handful of other colleagues)—all to cover up the wrongful discriminatory nature of Defendant's harassment campaign and ultimate termination of Dr. Shnyra.

At this early juncture, the foregoing allegations must be taken as true and construed in light most favorable to Dr. Shnyra, as a non-moving party.  *See, e.g., Galper, supra*, 802 F.3d at 443 (2d Cir. 2015).  Under the circumstances, Dr. Shnyra clearly has sustained her "*minimal* burden of showing facts suggesting an inference of discriminatory motivation." *See Littlejohn, supra*, 795 F.3d at 311.

For all the foregoing reasons, the Court should also deny that part of Defendant's motion which seeks to dismiss Dr. Shnyra's claims of discriminatory discharge, contained in Counts I and V of the Complaint.

## C.    Alexander Reyngold States a Claims for Hostile Work Environment

State Street contends that Alexander Reyngold has failed to make any allegations to support a claim for hostile work environment.  That argument has no merit for several reasons.

First, the allegations in the Complaint establish that Mr. Reyngold experienced hostile work environment both with respect to his age as well as his coming to defense of Dr. Shnyra's discrimination claims.   These two aspects are not mutually excusive, as State Street appears to suggest.   Mr. Reyngold could—and did—experience hostility at work with respect to his age, at or about the same time Mr. Reyngold, naturally, had come to support Dr. Shnyra, his closest and most crucial business associate.   Indeed, the allegations that support several aspects of hostile work environment (in Mr. Reyngold's case, two) are a common occurrence in many of the cases and are nothing more than the standard device of "pleading in the alternative."   *See, e.g., Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386, 399 (W.D.N.Y. 2017) (plaintiff alleging gender bias "may plead in the alternative" various theories of liability);   *accord Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994) (plaintiff in a racial discrimination case "may plead in the alternative").

Contrary to Defendant's assertions, Mr. Reyngold's "grievances" were not solely "age-neutral."   As with Dr. Shnyra before, State Street conveniently ignores the numerous allegations that relate to Defendant's pervasive "ageism."   As averred in the Complaint, Mr. Reyngold was repeatedly passed up for promotions in favor of younger, less experienced, less educated and less successful employees.   See Compl., at ¶¶ 202-203.

State Street also mischaracterizes the Complaint's allegations regarding Defendant's "Boston Club" culture: a destructive mix of sexism, ageism, religious and cultural intolerance, and xenophobia.   In this regard, the barriers that prevented both Dr. Shnyra and Mr. Reyngold from advancing their careers at State Street had to do with the discrimination and narrow-mindedness that were the results of State Street's "Boston Club" culture that permeated all corners of the company.   Mr. Reyngold's colleague suggestion that he "move to Boston" should

10

be construed in this light:  it is pointless to speculate what would have happened if Mr. Reyngold

followed that advice and moved to Boston; what is clear, from the allegations here, is that State

Street _did_ discriminate against, create hostile work environment and otherwise mistreat Mr.

Reyngold _here in New York_.   See Compl., ¶ ___.    And the pervasive mistreatment directed at

Mr. Reyngold certainly had worked deep psychological harm, short of the type of extensive

medical treatment required for Dr. Shnyra..  _See Aulicino, supra,_ 580 F.3d at 82 (2d Cir. 2009)

(discussing the five "non-excusive" factors for evaluation of hostile work environment claims).

In sum, the Complaint contains sufficient allegations to sustain a claim for hostile work

environment against State Street, and, accordingly, this Court should deny that part of

Defendant's motion that seeks dismissal of Mr. Reyngold's hostile environment claims.

**D.**     **Mr. Reyngold States a Claim for Wrongful Termination due to Age**

As with Dr. Shnyra before, State Street's argument that Mr. Reyngold has failed to state a

claim for wrongful termination due to age fundamentally misconstrues the allegations in the

Complaint.

Defendant erroneously focuses on the disbandment of ERAS as the operative event.

However, the Complaint goes much further to allege an illicit scheme by which State Street not

merely disbanded the entire group but also re-hired, or at least sought to rehire, "non-

problematic" employees (i.e. anyone other than the three Plaintiffs).   In this regard, the true

termination of Mr. Reyngold's position at State Street came about as the result of Defendant's

failure to re-hire him.   Given Defendant's pattern of  unlawful discrimination against Mr.

Reyngold on the basis of his age, as averred in the Complaint, allegations are sufficient to

establish, at this early stage, that Mr. Reyngold would have kept his job at State Street "but for"

his age. _Cf.  Sirota v. Welbilt Appliance, Inc._, 840 F. Supp. 11, 14 (E.D.N.Y. 1994) (refusing the

strike allegation regarding pattern of age discrimination because such pattern "could be relevant

to the question of whether plaintiff was terminated for age-related reasons"); *Nardi v. Stevens Inst. of Tech.,* 60 F. Supp. 2d 31, 49 (E.D.N.Y. 1999) ( sufficient issue of fact as to whether pattern of prior age discrimination constituted "evidence from which a discriminatory intent may be inferred" precluded summary judgment in defendant's favor).

Even if this Court were to find that Mr. Reyngold does not meet the more stringent "but for" standard under Title VII (and he clearly does),  Mr. Reyngold would still meet the more lenient requirement under NYCHRL.  In particular, NYCHRL merely requires Mr. Reyngold to show that his termination was "caused at least in part by discriminatory or retaliatory motives." *See e.g., Mihalik v. Credit Agircole Chevereux America, Inc.*, 715 F.3d 102 (2d Cir. 2013), 113 (2d Cir. 2013); *see also Rooney v. WHM LLC*,  2017 WL 3482066 (S.D.N.Y. Aug. 4, 2017) (noting and discussing more lenient standard under NYCHRL that requires adverse action "because of" discriminatory motive).  And Mr. Reyngold surely has met the more lenient standard under the local law:  by pleading a pattern of disparate treatment by State Street based on his age, *e.g.* by denying him promotion, and further alleging that the penultimate wrongful act of termination was also motivated "at least in part" by the same discriminatory animus.

For all the foregoing reasons, the Court should deny that part of Defendant's motion that seeks dismissal of Alexander Reyngold's claims of wrongful termination based on his age.

**E.**    **Kenneth Walker States a Claim for Age Discrimination**

State Street further argues that Kenneth Walker's age discrimination claims must be dismissed, in their entirety.  This argument lacks merit for the following reasons.

As with its challenge to Mr. Reyngold's similar claims, State Street's opposition to Mr. Walker's age discrimination claims misconstrues the central tenet of allegations in the Complaint.  Mr. Walker's initial termination from State Street's employ was just the first step in Defendant's scheme to get rid of Plaintiffs and, simultaneously, cover its tracks—by disbanding

12

the entire ERAS and then re-hiring all of the group's former employees with the notable exception of Mr. Walker (as well as Dr. Shnyra and Mr. Reyngold). The fact that Mr. Walker was not offered a job again had everything to do with his age, especially since, as alleged in the Complaint, State Street also delayed and nearly torpedoed Mr. Walker's initial hiring, in the first place, due to his age. See Compl., at ¶ 113. The fact that State Street also discriminated against Mr. Reyngold on the basis of age, further bolsters Mr. Walker's similar claim. In other words, and contrary to Defendant's assertions, Mr. Walker age discrimination claims do not hinge on a single allegations stated "on information and belief," but are supported by other direct factual allegations: State Street's disparate treatment of Mr. Reyngold; Defendant's wrongful termination, through failure to re-hire, of both Mr. Walker and Mr. Reyngold on the basis of their age.

In short, Mr. Walker's allegations of age discrimination, when seen in the totality of the circumstances of this case and construed in light most favorable to him, meet the "but for" requirement of the law. *See Sirota, supra*, 840 F. Supp. 11; *Nardi, supra*, 60 F. Supp. 2d 31.

Like Mr. Reyngold, moreover, Mr. Walker meets the less stringent threshold under NYCHLR, which requires a showing that his termination was "caused at least in part by discriminatory or retaliatory motives." *See Mihalik, supra,* 715 F.3d at 113; *accord Rooney, supra,* 2017 WL 3482066.

For all the foregoing reasons, the Court should deny the part of Defendant's motion that seeks to dismiss Kenneth Walker's claims in their entirety.

## POINT II

### THE COURT SHOULD DENY DEFENDANT'S MOTION TO STRIKE

Defendant's motion to strike numerous paragraphs from the Complaint should be denied.

It is well-settled that

13

> [t]he courts should not tamper with pleadings unless there is a
> strong reason for so doing. As such, motions to strike are generally
> disfavored. Moreover, unless it is clear that the allegations in
> question can have no possible bearing on the subject matter of the
> litigation, motions to strike allegations in the pleadings should be
> denied.

*Quanta Specialty Lines Ins. Co. v. Inv'rs Capital Corp*., 2008 WL 1910503, at *4

(S.D.N.Y. Apr. 30, 2008); *see also Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 2016 WL

6906583, at *6 (S.D.N.Y. Nov. 21, 2016) (motion to strike matters in a pleadings "should be

denied unless it is clear that the allegations in question can have no possible bearing on the

subject matter of the litigation").

The allegations State Street seeks to strike all meet this low threshold:  they have some

bearing, direct and/or indirect, on the subject matter of this litigation.

A.   **Mr. Hopkinson's History of Racial
     <u>Discrimination Has Bearing on Claims in This Case</u>**

Dana Hopkinson's history of race-based discrimination clearly has a bearing on Dr.

Shnyra's gender discrimination and hostile work environment claims in this case.

> Determining whether workplace harassment was severe or
> pervasive enough to be actionable depends on the totality of the
> circumstances. Because the crucial inquiry focuses on the nature of
> the workplace environment as a whole, a plaintiff who herself
> experiences discriminatory harassment need not be the target of
> other instances of hostility in order for those incidents to support
> her claim. Nor must offensive remarks or behavior be directed at
> individuals who are members of the plaintiff's own protected class.

*Cruz v. Coach Stores, Inc*., 202 F.3d 560, 570 (2d Cir. 2000)

Here, likewise viewed as a whole, Mr. Hopkinson's racially discriminatory conduct

bolsters Dr. Shnyra's claim of gender discrimination that, notably, also involves Mr. Hopkinson

as a central protagonist.  Even more so than plaintiff in *Cruz*, Dr. Shnyra witnessed and was

affected, albeit indirectly, by Mr. Hopkison racial discrimination—as the individual against

whom Mr. Hopkinson had discriminated was seeking employment in Dr. Shnyra's group and was interviewed by her.  *See* Compl., at ¶¶ 109-113.

Moreover, the decisions cited by Defendant in its brief are readily distinguished from this case.  *Dent v. United States Tennis Ass'n*, 2008 WL 2483288 (E.D.N.Y. June 17, 2008) involved vague, generalized allegations of the "legacy of discrimination" at the United States Tennis Association, which the court in this case held to be "inflammatory" and "unnecessary" to plaintiff's racial discrimination claims.  In *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 517 (S.D.N.Y.  2016), plaintiff's allegations concerned a board member's sexual harassment of an unidentified "co-worker."  Even in those cases, the courts closely examined the allegations before them, striking only some that clearly had no bearing on plaintiffs' claims and keeping those that had at least some bearing thereto.

Here, by contrast, the Complaint contains specific, detailed allegations of racial discrimination against a particular individual, Keith Dondl, by the same employee of State Street, Dana Hopkinson, who was also involved in other incidents of discriminatory conduct that go to the heart of Plaintiffs' claims.

For all the foregoing reasons, the Court should deny that part of Defendant's motion that seeks to strike Paragraphs 109-112 of the Complaint.

**B.    Allegations Regarding WARN Act and
        OWBPA Deficiencies Have Bearing on This Case**

State Street's failure to issue WARN Act notices and the half-baked, improper OWBPA disclosures Defendant hastily pushed out the door play critical roles in Plaintiffs' story: they highlight the fact, as alleged in the Complaint, that the sudden eradication of an *entire group* headed by Dr. Shnyra and Mr. Reyngold, ERAS, had *no business purpose*.  State Street committed these flagrant mistakes in its rush to disband ERAS, without any forethought or

planning expected in an orderly unwind.  Indeed, the Complaint catalogues a long list of violations, errors and omissions—with the WARN Act and OWBPA deficiencies just two examples that, for some unknown reason, invoked Defendant's ire.

Notably, State Street conceded its errors in connection with the OWBPA disclosures and amended the same, but only after several employees had raised this as an issue. See Compl., at ¶¶ 178-186.  In its brief, Defendant's counsel also admits that "OWBPA would be relevant to the extent Mr. Walker or Mr. Reyngold were alleging that they were not provided the correct disclosures."  *See* Pl. Memo of Law, at p. 24.  But that is exactly what happened here!

Equally of note, as averred in the Complaint, State Street hastily broke up ERAS into fictitious, non-sense "sub-groups" and shuffled employees around. *See* Compl., at ¶ 177. Under these circumstances, it is highly disingenuous for Defendant to now claim that it had no obligation to issue WARN Act notices to affected employees with respect to the so-called "planned" reduction in force (which, in fact, was completely unplanned) because ERAS was not large enough to require such notices.

In sum, State Street committed numerous violations and flagrant errors in its rush to disband ERAS (and under that cover, to get rid of Plaintiffs).  All of these deficiencies, including WARN Act and OWBPA at issue here, form part of the story being told in the Complaint and are thus relevant to Plaintiffs' claims.  Accordingly, the Court should deny that portion of Defendant's motion that seeks to strike the allegations in Paragraphs 46 (n.3), 75(f), 177(a), (b) and (e), 178-187 and 296 of the Complaint.

**C.     State Street's Settlement of Prior Gender
        Discrimination Claims Can Stay in the Complaint**

The Court should not strike State Street's prior settlement of gender discrimination claims by other female employees because the settlement has direct bearing on Dr. Shnyra's

similar claims in this case.   In particular, like Dr. Shnyra here, the women in that case were asserting claims of pay inequity against the same company, State Street.   In *Nguyen v. FXCM Inc.*, 364 F. Supp. 3d 227, 236–37 (S.D.N.Y. 2019), for example, the district court refused to strike references to defendant's prior settlements with government agencies, holding that "the subject matter of the . . . settlements [were] directly relevant to and . . . have bearing on the issues" before that court.   Noting that the courts generally disfavor motions to strike, the *Nguyen* court further distinguished the *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d. Cir 1976) decision, cited by State Street in its brief here, as limited to the specific facts of that case. Moreover, State Street has put the issue of gender bias at issue by aggressively denying any wrongdoing in its public statements with respect to the foregoing settlement, announced on October 5, 2017 or merely two days after Defendant had terminated Dr. Shnyra and her entire group.

Additionally, Plaintiffs are not offering State Street's prior settlement of gender discrimination claims by other female employees within the company as specific evidence of its liability *in this case*.   By referencing this settlement in their pleadings, Plaintiffs are also seeking to highlight the hypocrisy of State Street's "corporate feminism."   At the same time that Defendant is seeking to profit from the publicity generated by its "Fearless Girl" statute, hundreds of State Street's female employees have asserted that the company is discriminating against them with respect to their pay.   *See In re OSG Sec. Litig.*, 12 F. Supp. 3d 619, 621 (S.D.N.Y. 2014) ("[w]hile settlements are inadmissible as evidence of liability, they are admissible for other purposes, including proof of knowledge"); *accord Acco, Ltd. v. Rich Kids Jean Corp.*, 2016 WL 3144053, at *3 (S.D.N.Y. Apr. 11, 2016) (refusing to strike part of

pleadings that referenced defendant's settlement of prior lawsuit that raised substantively similar claims).

For all the foregoing reasons, the Court should deny that portion of Defendant's motion that seeks to strike allegations in Paragraphs 188-190 of the Complaint.

## POINT III

### IN THE ALTERNATIVE, THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND THEIR PLEADINGS

In the event this Court was to find that any part of Defendant's motion to dismiss and strike portions of Plaintiffs' Complaint has merit (and it does not), the Court should dismiss without prejudice to Plaintiffs to amending their pleadings.  It is well-settled that

> leave to amend should be freely granted when justice so requires [and] . . . will generally be granted unless: (1) there is evidence of undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies by amendments previously allowed; (2) allowing amendment would cause undue prejudice to the opposing party; or (3) the amendment would be futile.

*Raymond v. City of New York*, 317 F. Supp. 3d 746, 759 (S.D.N.Y. 2018) (citations omitted); *see also McGee v. Dunn*, 940 F. Supp. 2d 93, 100 (S.D.N.Y. 2013).

None of the three aforementioned factors, arguing against amendment, are present here for the simple reason that this is Plaintiffs' initial Complaint.  Accordingly, (1) there has been no prior versions and thus no "undue delay" or "repeated failures to cure";  (2) State Street will suffer no "prejudice" from an amendment; and (3) given the numerous issues with Defendant's arguments here, an amendment would not be "futile."

Notably, with respect to the second and third factors in particular, Defendant's counsel had initially contacted Plaintiff's counsel to confer with respect to State Street's then-planned motion to dismiss and strike.  Yet, Defendant's counsel never identified the specific portions of the Complaint that would be subject to the motion, after being asked to do so. *See* **Exhibit 1** to

the Declaration of Mikhail Ratner, dated July 1, 2019.   Thus, State Street cannot possibly complain that amendment would be "prejudicial" or "futile," since Defendant never bothered to inform Plaintiffs precisely what State Street found meritless and/or objectionable.

Equally of note, Defendant's motion to dismiss is self-contradictory, in a fundamental manner.   One the one hand, State Street argues that Plaintiff's Complaint is so lengthy that it supposedly "the polar opposite of the short and plain statement of" Plaintiffs' claims.   Yet, in the same breath, Defendant also contends that the allegations in the Complaint are insufficient to support many of Plaintiffs' claims.

Indeed, Plaintiffs have ample additional and increasingly specific factual allegations to proffer in this case.   *See* Declaration of Ksenia Shnyra, dated July 1, 2019, at ¶¶ 9-12.  Plaintiffs, for the moment, have withheld this additional information for the sake of keeping their Complaint as concise-yet-informative as possible, under the circumstances.   *See id.*, at ¶ 9.   It is the height of disingenuousness, in this regard, for State Street to complain about the sheer length of Plaintiffs' Complaint.   Defendant went to enormous lengths, first, to try to push Dr. Shnyra out the door, by demeaning, mistreating and harassing her.   And when that did not work, State Street disbanded an *entire department* headed by Dr. Shnyra—to cover up its wrongful termination of her employment at the Company.   Under this cover, Defendant also illicitly terminated Mr. Reyngold and Mr. Walker.   Such remarkable wrongdoing warranted a detailed exposition in the Complaint, which tells Plaintiffs' story with a great degree of economy and restraint.

For all the foregoing reasons, should the Court somehow find Plaintiffs' allegations in the Complaint either insufficient or objectionable (and they are neither), it should grant Plaintiffs leave to amend their pleadings.

## **<u>CONCLUSION</u>**

For all the foregoing reasons, the Court should (1) deny Defendant's Motion to Dismiss and Strike; or (2) in the alternative, grant Plaintiffs leave to amend their Complaint.

Dated: New York, New York
　　　　July 1, 2019

　　　　　　　　　　　　　　　　　　　/s/ Mikhail Ratner
　　　　　　　　　　　　　　　　　　　Mikhail Ratner, Esq. (MR-6264)
　　　　　　　　　　　　　　　　　　　Peter Roldan, Esq. (PR-9999)
　　　　　　　　　　　　　　　　　　　EMERGENT LLP
　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*