UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                         :

KSENIA SHNYRA, ALEXANDER
REYNGOLD, and KENNETH WALKER,

                             Plaintiffs,

              -v-

STATE STREET BANK AND TRUST CO.,
INC.,

                            Defendant.

------------------------------------------------------------- X

           :
           :
           :
           :
           :
           :
           :
           :
           :

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/24/2020

1:19-cv-2420-GHW

<u>MEMORANDUM OPINION
AND ORDER</u>

GREGORY H. WOODS, United States District Judge:

      Plaintiffs filed this action in March 2019, claiming that their former employer, State Street

Bank and Trust Co., Inc., had discriminated against them on the basis of their age and gender. Now,

eighteen months later, six months into the discovery schedule, and with several extended deadlines

in the rearview mirror, Plaintiffs are still looking for responsive documents to provide in response to

Defendant's discovery requests. They missed the Court-ordered deadline for production of those

materials. Because the Court concludes that Plaintiffs' conduct was willful and not substantially

justified, Defendant's motion for the imposition of sanctions is granted.

## I.    BACKGROUND

      To contextualize the dispute at issue, a relatively detailed recitation of the procedural history

of this case is warranted.

      Plaintiffs filed their complaint in March 2019. Dkt. No. 1. Their detailed, 87-page long

complaint followed on the heels of an extended investigation by the Equal Employment

Opportunity Commission (the "EEOC"). Dkt. No. 1 at 7. Plaintiffs claimed that the defendant had

discriminated against them on the basis of their age and gender and then retaliated against them in

violation of a variety of state and federal statutes.

Defendant filed a motion to dismiss the complaint on June 6, 2019.  Dkt. No. 17.  Plaintiffs' opposition was due no later than July 1, 2019.  Plaintiffs filed their opposition late.  Dkt. No. 25.  It was late by just a day, which would be insignificant, except for the fact that Plaintiffs missed their first deadline in this case—an unfortunate omen of the future events that led to this opinion.  In support of the motion to dismiss, one of the plaintiffs, Ksenia Shnyra, filed a declaration in which she wrote that "I can state, in no uncertain terms, that Plaintiffs have ample additional and increasingly detailed factual information to submit to the Court.  We have withheld this additional information, at this juncture, for the sake of keeping our Complaint as concise-yet-informative as possible, under the circumstances."  Dkt. No. 26 at 2–3.

The motion to dismiss was fully briefed on February 20, 2020, when the case was assigned to me after the unfortunate and premature passing of Judge Batts, to whom the case had been assigned.  The Court denied the motion to dismiss on March 10, 2020.  Dkt. No. 32.

The Court first scheduled the initial pretrial conference to take place on April 3, 2020.  Dkt. No. 30.  On March 27, 2020, counsel for Plaintiffs, Mikhail Ratner, wrote the Court requesting an adjournment of the conference.  The letter asserted that good cause existed for the extension because of "several health scares" that had "strained and scrambled my work schedule, even beyond the general stress associated with the current pandemic."  Dkt. No. 35.  The Court granted the application, deferring the initial pretrial conference to April 10, 2020.  Dkt. No. 36.  On April 3, 2020, Mr. Ratner asked for another extension of the conference, for very good cause:  "my wife has contracted COVID-19."  Dkt. No. 37.  The Court granted the request again, extending the pretrial conference for another month, to May 7, 2020.  Dkt. No. 38.

Counsel's third request on April 30, 2020 for an adjournment of the initial pretrial conference also came with a good justification:  "I've succumbed to the novel coronavirus myself." Dkt. No. 42.  The Court granted that request the same day, pushing back the conference for two weeks, as requested, to May 21, 2020.  Dkt. No. 43.

The Court held an initial pretrial conference on May 21, 2020.  At that point, the case had been pending for 14 months.  During that time, the parties had ample time to prepare for discovery in the case, but none had been conducted.  During the initial pretrial conference, the Court engaged in an extended discussion with the parties regarding their concerns about the discovery process. The parties discussed the volume of discovery to be sought in the case, and, in particular, "the elephant in the room"—the effect of the ongoing pandemic on the parties' ability to conduct discovery.  Dkt. No. 47 at 11:5.  At that point, the New York legal community had been dealing with COVID-19 for two months, and the parties discussed expedients to deal with the limitations imposed by COVID-19, including depositions by Zoom.  *Id.* at 11:17–21.  As a result of those concerns, the Court adopted the parties' proposed discovery schedule, which was relatively lengthy.

The deadlines for discovery were set out in a case management plan and scheduling order issued by the Court on May 22, 2020.  Dkt. No. 46.  For purposes of this motion, the relevant deadlines were:

> June 1, 2020:  HIPAA-compliant medical records releases due;
>
> June 5, 2020:  Initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) due;
>
> June 12, 2020:  Initial requests for production of documents, and interrogatories due; and
>
> November 17, 2020:  Completion of fact discovery.

During the initial pre-trial conference, the Court emphasized that the deadlines in the case management plan were "real deadlines and that they are, as written, deadlines for completion of discovery."  Dkt. No. 47 at 17:9–14.  The Court explained the importance of working diligently to meet the deadlines.  In one thread that has resonance for this dispute, the Court stated:

> [B]ear in mind that my expectation is that you'll make professional judgments about the amount of resources that you want to invest in this case.  So if you choose to spend time on other cases instead of this one, you shouldn't expect that that will give rise to a finding of good cause by the Court.  Instead, you may find that I will ask you to live with the consequences of your decision about what you want to focus your energies on.  So I'm giving you this resource.  If you choose to use it poorly, you should not expect that I will rescue you from that decision by extending the deadlines.

*Id.* at 21:10–20.

Plaintiffs' serial failures to meet the discovery deadlines began with the first one:  Plaintiffs failed to provide HIPAA authorizations by June 1, 2020.  So counsel for Defendant reached out on June 2, 2020, to inquire as to their whereabouts.  Declaration of David A. Tauster, Dkt. No. 67 ("Tauster Decl."), at ¶ 12.  Mr. Ratner responded the next day, stating that he had "'distributed the authorizations a while back' to his clients and that they 'were supposed to get them back to me by Monday, per the Court's order.'"  Mr. Ratner promised that he would "have the authorizations to [defense counsel] by tomorrow morning, June 4th."  He did not do that.  Instead, on June 5, he emailed counsel for Defendant to advise that he "just spoke to [his] clients" and that he "should have the forms to you shortly."  *Id.* ¶ 13.

Mr. Ratner did not send the forms to Defendant shortly.  Nor did he send Plaintiffs' initial disclosures by June 5, 2020, as required by the case management order.  *Id.* ¶ 15.[1]  Instead, six days later, Mr. Ratner wrote defense counsel to "apologize for [the] delay in responding and in providing the initial disclosures and HIPAA authorizations."  Mr. Ratner explained that the process "has been an educational process for [his] clients who are concerned with protecting their privacy and are also learning about the litigation process."  *Id.* ¶ 16.  Mr. Ratner promised the HIPAA authorizations and initial disclosures that day:  "I will absolutely have these to you by end of the day today."  *Id.*  Mr. Ratner did not send the initial disclosures and HIPAA authorizations that day; he did send them the following day, June 12, 2020—11 days and 7 days late, respectively.  *Id.* ¶ 17.

The deadline for service of document requests and interrogatories was June 12, 2020. Defendant served its requests and interrogatories timely.  As a result, Plaintiffs' responses to the demands were due on or before July 13, 2020.  *Id.* ¶ 19.  Plaintiffs failed to serve any discovery

---

[1] Defendants served their initial disclosures timely.  *Id.* ¶ 11.

demands at all.  Just to underscore this—15 months after Plaintiffs filed their complaint, Plaintiffs'
counsel was unable to serve initial discovery requests to his adversary.

Plaintiffs failed to meet the July 13, 2020 deadline to serve responses to Defendant's
discovery requests.  Mr. Ratner did not reach out to his adversary in advance, but simply let the date
pass without comment.  *Id.* ¶ 20.  Counsel for Defendant followed up with Mr. Ratner on July 14 by
email; Mr. Ratner did not reply.  *Id.* ¶¶ 21–22.  So defense counsel emailed again on July 20, 2020;
Mr. Ratner did not reply.  *Id.* ¶ 23.  On July 22, 2020, Defendant's counsel emailed again.  *Id.* ¶ 24.
Now Mr. Ratner responded, saying that he would "be in touch with a detailed response by
tomorrow morning" and that he "will likely need to write to the court as well."  *Id.*  Mr. Ratner did
not write the next day.  *Id.* ¶ 25.  So on July 23, 2020, counsel for Defendant wrote Mr. Ratner again,
saying "I am not sure what detailed response you had in mind, or why you were or are planning to
write to the court.  However, the fact remains that Plaintiffs' discovery responses are still overdue
and you have still not provided a date certain by which we will receive the documents and
responses."  *Id.* at Ex. H.  Mr. Ratner did not reply.  *Id.* ¶ 26.

Understandably, confronted by the missed deadline, and a non-communicative adversary,
counsel for Defendant wrote the Court to ask for assistance.  Dkt. No. 49.  The Court granted the
application, and scheduled a conference for July 30, 2020.  Dkt. Nos. 50, 51.  Prior to the
conference, Mr. Ratner wrote counsel for Defendant apologizing for the delays, explaining that it
had been a rough time for him over the prior months, and that he was on a "long-delayed family
getaway from NYC."  Tauster Decl. at Ex. I.  Mr. Ratner told counsel for Defendant that he
planned "to write to the court to ask for extension of various deadlines, under the circumstances,
and I hope you will not oppose the request."  *Id.*

Mr. Ratner's letter to the Court in advance of the conference took a similarly apologetic
tone.  Mr. Ratner wrote:

These last few months have been some of the most difficult of my life.  In addition to dealing with the COVID-19 virus that swept through my entire family, my wife and I were recently in a car accident.  I escaped relatively unscathed but my wife was seriously hurt and required shoulder surgery that has left her temporarily unable to use her right arm.  I have been spread very thin, especially now that the usual network of support (family, friends even paid help) is not easily available.

Regardless of my personal difficulties, however, plaintiffs deserve their day in court (as Your Honor made clear in denying defendant's motion to dismiss), and they also deserve more vigorous representation.  For these reasons, I have asked my colleague, Jason Fisher, to step in and take on a far more active role in this case.

I hope to avoid needless motion practice and use this call as on opportunity to re-set the discovery process.

Dkt. No. 53.  Counsel's letter did not mention his family getaway, described to counsel in their email correspondence, but took a reasonable tone, and promised better, more vigorous representation in the future.  He suggested that his colleague, Mr. Fisher, would take on some of the load.

The conference that followed proceeded as one might expect given the explanations proffered by counsel for Plaintiffs.  Counsel for Defendant took a cooperative approach, agreeing to grant Plaintiffs a two-week extension of time to respond to Defendant's discovery requests and to serve their own discovery requests.  Defendant's proposal would have Plaintiffs' discovery due on August 14, 2020.  During the conference, the Court granted the requested extension of time— extending the deadlines to August 14, 2020, a deadline that Mr. Ratner said that he could meet. Tauster Decl. ¶ 32.  During the conference, counsel for Defendant explained that he would be going on paternity leave and wanted to work to schedule discovery so that it would allow him to take that time; consistent with the collegial tone of that conference, Mr. Ratner and the Court expressed their understanding and worked to set a schedule that took counsel's paternity leave into account.  *Id.*

The day before the new, extended deadline, Mr. Ratner reached out again to counsel for Defendant.  This time, he advised that he had been taken to the emergency room, and, as a result, "[m]ost likely won't be able to send you discovery tomorrow."  *Id.* ¶ 33.  Again, counsel for Defendant agreed to the extension, but asked that Mr. Ratner obtain an equivalent extension of all

discovery deadlines, lest Defendant lose time to complete discovery as a result of Plaintiffs' delay. *Id.* On August 14, the day of the deadline,[2] Mr. Ratner wrote the Court to request a "brief adjournment" of seven days, until August 21, 2020, because of his illness. Dkt. No. 54. The Court granted the request, and adjourned all of the deadlines in the case. Dkt. No. 55.

On August 20, the day before the expiration of the extension that Mr. Ratner had requested, he wrote counsel for Defendant again. Tauster Decl. ¶ 35. Again, he needed an extension. This time, counsel explained that he needed surgery, and, as a result, requested an extension to September 4, 2020—again, an extension not only of his responses to Defendant's discovery requests, but for his opportunity to make his first round of written discovery requests to Defendant. *Id.* Counsel for Defendant again collaboratively agreed to the extension, but noted that they could not agree to further extensions. Counsel for Defendant reminded Mr. Ratner that he too had a life outside of the law—his anticipated paternity leave—and that the continued extensions requested on behalf of Plaintiffs would interfere with his ability to take paternity leave while remaining involved in the case. *Id.*

Mr. Ratner wrote the Court on August 21—again the request was untimely submitted on the extended due date. Dkt. No. 56. This time, he appended a declaration from his doctor, explaining the nature of his illness, and stating that "I expect Mr. Ratner to make a full recovery and resume his regular activities within 3-5 days after the August 24th surgery." *Id.* at 2. Mr. Ratner requested that his deadlines to respond to Defendant's discovery requests and to serve his own be extended to September 4, 2020. The Court again granted his request. Dkt. No. 57.

On September 4, however, Plaintiffs produced no responses or requests. Instead, Mr. Ratner reached out to counsel for Defendant, writing that he would be "asking the court for another

---

[2] The Court's Individual Rules of Practice and the case management plan in this case require that requests for extensions of time be made no less than two business days prior to the date sought to be extended. Mr. Ratner's request was, therefore, untimely.

(final!) adjournment to September 14th . . . ." Tauster Decl. ¶ 37.  Contrary to his doctor's

expectations, he claimed that his "post-op recovery has taken a lot longer than anticipated . . . ." *Id.*

Mr. Ratner stated that the request would be "[f]inal because, either way, my colleague, Jason Fisher,

will be filing a notice of appearance and at least co-piloting this case." *Id.*  But Mr. Ratner did not

file a request for an extension of time with the Court on September 4.  Nor did his colleague, Mr.

Fisher, enter an appearance.

Counsel for Defendant was forced to chase after Plaintiffs' production.  On September 8,

2020, counsel for Defendant wrote:

> I'll be blunt – the delays are unacceptable, particularly since all of the requests come at
> the last minute.  I am sympathetic to health problems but by the same token you first
> mentioned Mr. Fisher becoming involved with this case back in June, and yet he has
> yet to even be CC'd on a single email from you – let alone filing a notice of appearance.
> Moreover, because of these extensions the entire summer has been squandered in this
> case, which is far from ideal for a number of reasons (not least of which the fact that,
> as you know, I am going out on parenting leave in November).

Tauster Decl., Ex. M.  Nonetheless, counsel for Defendant offered a "last and final extension" to

September 11, 2020.  *Id.*  Defendant rejected Plaintiffs' request for an extension to September 14,

2020.  Defendant asked for additional time to respond to Plaintiffs' requests (60 days, rather than

the default 30) after they were served.  *Id.*  Mr. Ratner did not respond to the email.

So on September 10, counsel for Defendant wrote again, asking him to "confirm that we are

in agreement on my [September 8] email below."  Tauster Decl. ¶ 41.  Mr. Ratner responded

"Confirmed."  *Id.*  But the letter that Mr. Ratner filed on September 11, 2020 was not consistent

with the agreement that he had just confirmed.  Instead, he asked for an extension of time until

September 18, 2020—four days past the date that Defendant had rejected.  Dkt. No. 58.  Mr. Ratner

explained that the delays were due to medical issues and wrote:

> With all due respect to Mr. Tauster's evident frustration (and he has been nothing but
> cordial up until now), no one is more frustrated and affected by this ordeal than me.
> These last few days have been the first time I have been, relatively, free of pain and I
> am finally able to resume close-to-normal workload.  I will use the extra time,
> requested here, not only to catch up on this case; my colleague, Jason Fisher, plans to

file a Notice of Appearance and help, even more than what he has done already behind
the scenes.

Dkt. No. 58.

The Court held another conference to discuss these issues on September 15, 2020.  During
the conference, counsel for Plaintiffs explained that he could respond to Defendant's discovery
requests by the requested date of September 18, 2020.  Tauster Decl. ¶ 47.  Relying on those
representations, the Court granted Plaintiffs' requested extension of time to September 18, 2020,
and also delayed the deadline for the completion of discovery.  Dkt. No. 61.  Because of the
extended delays in the production of Plaintiffs' discovery responses, and based on Plaintiffs'
representations to the Court, the Court also ordered that Plaintiffs respond to Defendant's
outstanding discovery requests by September 18, 2020.  *Id.*

It will not surprise the reader of this narrative that come September 18, 2020, Plaintiffs did
not respond to Defendant's discovery requests.  And Mr. Ratner's colleague, Mr. Fisher, again failed
to enter his long-promised notice of appearance in the case.  Plaintiffs did, however, serve their own
discovery requests.  Tauster Decl. ¶ 51.  This was eighteen months after Plaintiffs filed the case.

As to the again overdue responses, Mr. Ratner offered a new explanation for Plaintiffs'
failure to respond.  In his September 18, 2020 email transmitting Plaintiffs' discovery requests, Mr.
Ratner wrote:

> I plan to make Plaintiffs' document production and interrogatory responses to State
> Street by end of the day today, by sharing these over Google Drive.  Responsive
> documents, in particular, are too voluminous to simply email to you.

Tauster Decl., Ex. O.  Mr. Ratner did not send Plaintiffs' responses to Defendant by the end of the
day, leading defense counsel again to the hunt.

Two days later, counsel for Defendant wrote Mr. Ratner, inquiring about the status of the
promised Google Drive link providing access to Plaintiffs' discovery responses.  The next day,
September 21, 2020, Mr. Ratner wrote back, asserting "I believe I had shared these on Friday.  I'll

take a look and *reshare* as soon as I'm before a computer." Tauster Decl., Ex. Q (emphasis added). Counsel for Defendant wrote Mr. Ratner three emails that day, first responding definitively that Mr. Ratner had not shared the link on Friday as he asserted, and inquiring about the status of the documents. Tauster Decl., Ex. R.

Mr. Ratner responded the next day, September 22, again asserting that IT issues were the only cause of his delay. "Something happened to my Google Drive, which I was trying to figure out since yesterday's afternoon. I brought in IT support help and expect to have document responses and interrogatories for your [sic] shortly and responsive documents by noon. I'm sorry for this delay (I know I sound like a broken record), but this is a matter of hours." Tauster Decl., Ex. S. Defendant's counsel relied on that representation, waiting on tenterhooks for the promised link with voluminous discovery responses. Tauster Decl. ¶ 61. It never came.

Instead, after more outreach by counsel for Defendant, on September 23, Mr. Ratner transmitted what he represented to be Mr. Reyngold's response to Defendant's requests. *Id.* ¶ 63. And in the same email, Mr. Ratner said that he "expect[ed] to have Walker's responses by 3-4 pm today and responsive documents later tonight." *Id.* Again, Mr. Ratner did not meet expectations. Instead, on September 24, 2020, he sent what were described as Mr. Walker's written responses to Defendant's requests. Regarding the remaining documents to be produced, Mr. Ratner wrote that he was "about to do a final run-through the materials with my office manager before we make these available to you." *Id.* ¶ 65. The interrogatory responses that had been sent in up to that point were not verified, so Mr. Ratner stated that he was "waiting for clients' signatures to certify (really, re-certify) the answers." *Id.* "All should be ready by EOB today," he wrote. *Id.* It is worthy of note that Plaintiffs' prior justifications for delay—in particular, the IT issue with the Google link—had disappeared from Mr. Ratner's proffered justifications. Now he was reviewing the materials before they were to be transmitted.

Plaintiffs' counsel did forward a Google link to Defendant on September 25, but the attachments were not "voluminous" as previously described by Mr. Ratner. *Id.* ¶ 68. Instead, Dr. Shnyra's document production consisted of a single 180-page pdf file. And Mr. Reyngold's entire production consisted of a single 47-page pdf file. *Id.* ¶¶ 69, 71. Remember that Dr. Shnyra had averred back at the time of the motion to dismiss in this action "that Plaintiffs have ample additional and increasingly detailed factual information to submit to the Court." Their total production was less than 230 pages, almost all of which had been produced in the EEOC proceedings before they filed suit. *Id.* ¶¶ 68–76. This left Defendant's counsel perplexed at the cause of the delay—and skeptical that the production was complete. *Id.* ¶¶ 76–77.

The September 25 production also included no documents from one of the plaintiffs—Mr. Walker. Nor did it contain any responses to Defendant's interrogatories. *Id.* ¶¶ 78–79. So counsel for Defendant again followed up: first, with an email on September 28, to which Mr. Ratner did not respond, and then with another email on September 29. *Id.* ¶¶ 80–81. Mr. Ratner emailed counsel for Defendant in the morning of September 30, writing: "I will have interrogatory responses to you today by noon, for both Kenneth Walker and Alexander Reyngold, and later in the afternoon for Ksenia Shnyra. There was [sic] last-minute changes to the answers which we couldn't finalize going into last Friday night's Shabbat and Yom Kippur. I do expect additional documents from the clients by end of the day today, which I will review and produce by tomorrow morning." Tauster Decl., Ex. CC. So, as of September 30, Mr. Ratner confirmed that the September 25 document production was not complete—he expected additional documents from the clients. September 30 closed without the delivery of the documents promised for that afternoon. *Id.* ¶ 83.

Two pieces of the promised production arrived the next day, October 1. First were Dr. Shnyra's interrogatory responses. *Id.* ¶ 85. But they were not verified. In his transmittal email, Mr. Ratner wrote that he was "waiting for client's physical signature on the verification page and will provide updated verification page as soon as I get it." *Id.* The verification had not been provided to

Defendant's counsel by the time that this motion was filed, 20 days later. *Id.* ¶ 86. Second was a Google Drive link to the "First batch of Walker's documents." *Id.* ¶ 87. That production consisted only of a 14-page pdf file of documents that had been submitted by Mr. Ratner to the EEOC—in other words, documents that Mr. Ratner had before filing this lawsuit. *Id.* ¶ 88.

Counsel for Defendant followed up again on October 5, 2020, asking Mr. Ratner to "show a bit more urgency" because the Defendant was "trying to avoid going back to Judge Woods" but Plaintiffs "seem to be leaving [State Street] with no other recourse." *Id.* ¶ 92. This email garnered no response, leaving Defendant's counsel in the familiar position of having to chase down a response. On October 8, 2020, counsel for Defendant wrote Mr. Ratner, asking for him to confirm "the date and time certain by which you will be providing the verified interrogatory responses for all three Plaintiffs and the 'more documents' referenced in your email below." *Id.* ¶ 93.

Mr. Ratner wrote back later that day: "I'm sorry for delay in responding and following up. I've had some difficulties in getting information and materials back from the clients, including things as trivial as signed verification pages. Gina, Jason and I are having a meeting with them this Monday to figure out what's going on. In the meantime, I expect to have Alex Reyngold's responses to interrogatories by tomorrow." Tauster Decl., Ex. KK. As counsel for Defendant noted, this was the first time in the saga of failed responses, and series of excuses (including Mr. Ratner's explanation that the voluminous production was delayed merely by an IT issue), in which Mr. Ratner placed the blame for failure to respond to Defendant's overdue discovery requests on a communication issue with his clients. By the time that Defendant filed this motion, Plaintiffs had provided no further discovery responses. *Id.* ¶ 93.

Defendant filed a pre-motion letter requesting leave to file a motion for sanctions on October 9, 2020. Dkt. No. 62. The Court scheduled the conference for October 14, 2020. Dkt. No. 63. Shortly before the conference, Mr. Ratner filed a declaration by Dr. Shnyra, which was

dated October 13, 2020.  Dkt. No. 64.  The declaration supported no motion; it was accompanied

by no request by counsel.  It is worthy of quotation at length:

> 1.  I am the lead Plaintiff in the above-referenced case.
> 2.  I understand that there has been substantial delay in discovery connected with our attorney's, Mikhail Ratner, heath [sic] issues and I greatly appreciate this Court's understanding in giving us extra time to proceed with discovery.
> 3.  I write to respectfully request a brief extension of time for us to complete discovery.
> 4.  This time, the delay is connected with my own recent exposure to COVID-19 and the need to quarantine as well as the disruptions caused by the shut-down orders issued by Mayor DeBlasio and Governor Coumo [sic], which affected me directly as I live in the area subject to these orders.
> 5.  I understand that Alexander Reyngold also lives in another area affected by the shut-down orders.
> 6.  The three Plaintiffs—myself, Mr. Reyngold and Kenneth Walker—had a lengthy meeting with our attorney yesterday, October 12, 2020, to focus on completing discovery.  I expect to finish producing documents to Mr. Ratner within the next 10 days and I believe that Mr. Reyngold will do the same.  I understand Mr. Walker does not have any further documents to produce.

Dkt. No. 64.

The pre-motion conference took place on October 14, 2020.  During the conference, the

Court granted Defendant leave to file this motion to compel.  Mindful of the fact that discovery in

this case did not begin until May—months after the outbreak of the pandemic, and after Mr. Ratner

had recovered from a bout with the virus—the Court invited Plaintiffs' counsel to provide

additional factual support for Dr. Shnyra's statements that now, in October, it was COVID that

gave rise to a need for a further extension.  The Court also invited counsel for Plaintiffs to submit an

affidavit to respond to Defendant's suggestions that he had lied to them in justifying prior failures to

produce discovery on things such as the asserted IT failure—particularly, given Dr. Shnyra's

declaration that she had additional documents that she expected to produce to Mr. Ratner for the

first time ten days hence.

Defendant filed this motion on October 21, 2020, supported by substantial documentary

evidence of the parties' communications.  Dkt. Nos. 66–67.  Plaintiffs' opposition was due October

28, 2020.  Plaintiffs did not file a timely opposition, so now it was the Court's turn to pursue Mr.

Ratner for a response.  On October 29, 2020, the Court issued an order directing Plaintiffs to file their opposition "forthwith" and, in any event, no later than October 30, 2020.  Dkt. No. 69.

Mr. Ratner filed an affirmation in response to the motion on October 30, 2020.  Dkt. No. 70.  Plaintiffs did not file a memorandum of law.  Mr. Ratner's affirmation is compelling and sad, explaining the series of stressors in his personal life over the prior months and their toll.  He recalls "the old adage, ascribed to Benjamin Franklin, that someone who 'is good for making excuses is seldom good for anything else.'"  *Id.* at 4.  Mr. Ratner affirms that "no malice, willful neglect or any sort of wrongdoing have caused these delays.  Nor is this a case of me favoring other matters, professional or personal, at the expense of this case.  I have been juggling everything with equal mix of exhaustion and persistence.  I have not given up, and my clients (these and others) have not given up on me."  *Id.* (paragraph headings omitted).

The affidavit then argues that the delays have not prejudiced Defendant.  It does not provide additional detail regarding the issues as to which the Court inquired during the conference—the truthfulness of the excuses previously provided to Defendant's counsel for prior delays, or how precisely the Governor's recent shut down orders had prevented Dr. Shnyra and the other plaintiffs from producing discovery seven months into the pandemic.  The declaration ends:

> I am now going back to write my Memorandum of Law.  Frankly, it is raw and needs a lot of work to be submitted.  But I know that imposition of sanctions is given to the sound discretion of this court; there is no bright line rule; and this awesome power should be used sparingly.  I hope and trust this Court will not dismiss this case, directly or through the operation of a drastic sanction, months after it held that Plaintiffs can proceed with all their claims.  For all the foregoing reasons and all the reasons to come in my Memorandum of Law, I respectfully submit that the Court should deny that part of State Street's motion which seeks to sanction Plaintiffs.

*Id.* at 7.  The declaration was not signed by the affiant.  No memorandum of law was ever submitted.

Defendant filed its reply on November 4, 2020 (the "Reply").  Dkt. No. 71.  Unmoved by Mr. Ratner's unsigned declaration, Defendant seeks the ultimate sanction of dismissal of this action. Defendant's reply notes that "[t]he opposition is most noteworthy for what it lacks – there are no

affidavits from Plaintiffs explaining their conduct, no correspondence from counsel indicating that there was any confusion about what was required in this litigation, nor any other evidence which refutes State Street's assertions that Plaintiffs' conduct was willful." Reply at 3. The Reply also points out that the opposition presents no commitment by Plaintiffs regarding the completion of discovery. As a result, Defendant argues, dismissal of this action is the appropriate remedy:

> State Street respectfully submits that the Court should not impose a sanction less than dismissal for Plaintiffs' conduct when their late and incomplete response to the motion for sanctions shows that they are likely to persist in their course of conduct indefinitely. If Plaintiffs actually had a proposed plan to get this litigation on track and to avoid dismissal of the complaint, they would have set the plan out in their opposition. Their failure to do so, on top of their other failures in connection with responding to the motion and the underlying conduct to which the motion is targeted, demonstrates that this is likely to be another delaying tactic, necessitating further motion practice and the time and attention of this Court.

*Id.* at 5.

## II.   LEGAL STANDARD

A district court has broad discretion to determine the appropriate sanctions for discovery abuses under both Rule 37 of the Federal Rules of Civil Procedure and its inherent powers. *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 138 (S.D.N.Y. 2009).

Rule 37 provides in pertinent part that

> If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> (i)   directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii)  prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv)  staying further proceedings until the order is obeyed;
> (v)   dismissing the action or proceeding in whole or in part;
> (vi)  rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).  "Several factors may be useful in evaluating a district court's exercise of discretion" to impose sanctions pursuant to this rule, including "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (internal quotation marks and alteration omitted) (quoting *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)).  These factors are not exclusive, however.  *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).  And they need not each be resolved against the sanctioned party to fall within the scope of the district court's wide discretion in imposing sanctions. *Id.*

"[D]ismissal or default imposed pursuant to Rule 37 is a 'drastic remedy' generally to be used only when the district judge has considered lesser alternatives.  Despite the harshness of these measures, however, 'discovery orders are meant to be followed,' and dismissal or default is justified if the district court finds that the failure to comply with discovery orders was due to 'willfulness, bad faith, or any fault' of the party sanctioned . . . ."  *Id.* (citations omitted).

Under Rule 37(b)(2)(C), instead of or in addition to the sanctions permitted under Rule 37(b)(2)(A), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  "Monetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled."  *Seena Int'l, Inc. v. One Step Up, Ltd.*, No. 15-cv-01095 (PKC)(BCM), 2016 WL 2865350, at *11 (S.D.N.Y. May 11, 2016).

"Thus, Rule 37(a) provides that whenever a party makes a successful motion to compel disclosure, the court 'must,' after giving an opportunity to be heard, award 'the movant's reasonable expenses incurred in making the motion, including attorney's fees,' unless the movant failed to make

good-faith efforts to resolve the matter without court intervention, the nondisclosure was substantially justified, or 'other circumstances make such an award unjust.'" *Id.* (citing Fed. R. Civ. P. 37(a)(5)(A)). "The Court has wide discretion to apportion Rule 37 monetary sanctions between a party and its counsel." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318 (GBD)(BCM), 2017 WL 3671036, at *20 (S.D.N.Y. July 18, 2017), *report and recommendation adopted*, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017).

Moreover, a "failure to respond or object to a discovery request in a timely manner waives any objection which may have been available." *Cohalan v. Genie Indus., Inc.*, 276 F.R.D. 161, 163 (S.D.N.Y. 2011) (citations omitted). "Generally, courts will only impose waivers for tardiness under three conditions: (1) where there is no showing of good cause for the late response, (2) where a party has not responded to discovery requests despite court intervention, or (3) where a party has failed entirely to respond." *Id.*

## III.   DISCUSSION

Plaintiffs' failure to comply with the Court's order mandating production of discovery, and their persistent failure to engage meaningfully in the discovery process merits the imposition of sanctions. For the following reasons, the Court finds it appropriate to order Plaintiffs to pay Defendant's reasonable fees and expenses incurred in seeking judicial intervention for Plaintiffs' repeated noncompliance with their discovery obligations.

<u>Willfulness</u>: As the factual recitation above makes clear, there are ample examples of willful non-compliance on the part of Plaintiffs here to support the conclusion that this factor weighs heavily in favor of sanctioning them. "The failure to comply with discovery orders will be deemed willful when the court's orders have been clear, when the party has understood them and when the party's non-compliance is not due to factors beyond the party's control." *Rates Tech. Inc. v. Mediatrix Telcom, Inc.*, No. 05-cv-2755 (JS)(AKT), 2008 WL 8443501, at *14 (E.D.N.Y. Mar. 31, 2008) (citations omitted), *supplemented sub nom. Rates Tech. Inc. v. Mediatrix Telecom, Inc.*, No. 05-cv-2755

(JS)(AKT), 2008 WL 8443564 (E.D.N.Y. Sept. 2, 2008).  The Court's order requiring Plaintiffs to produce their discovery responses by September 18, 2020 was clear.  And Plaintiffs' failure to comply with that order was the result of their lack of diligence, not factors outside of their control.

Moreover, Plaintiffs knew of their discovery obligations, yet failed to comply with them timely over an extended period.  Plaintiffs' counsel provided multiple, morphing justifications for their failure to respond to the discovery requests over the course of many months.  The most recent declaration submitted by Dr. Shnyra places many of those under question:  she asserts that five months into the discovery process and over a year and a half after the commencement of this case, she and the other plaintiffs are only now reviewing their documents for production to their counsel for review.  Recall that Plaintiffs' counsel affirmed to the Court that the production would be complete by September 18, and that the Court ordered the completion of the production by that date on the basis of that representation.  Plaintiffs knowingly failed to comply with the Court's order, illustrating their willful misconduct.

The Court has great empathy for the health-related issues raised by counsel for Plaintiffs.  The Court waited for two months to start discovery at counsel's request as a result of the COVID pandemic.  The Court granted every extension of time requested by Plaintiffs thereafter driven by health concerns, giving them the amount of time that they asked for in each instance.  But Plaintiffs failed to meet even their proposed deadlines.

And a year and a half into the litigation, and five months into the discovery period, Dr. Shnyra has disclosed that only now are Plaintiffs reviewing documents for production to their counsel for review.  Plaintiffs did not respond to the Court's request to provide more detail regarding Dr. Shnyra's mid-October invocation of COVID as a justification for their failure to provide discovery eight months into the pandemic, and five months into the discovery period.  So the Court affords that justification the scant weight that it now affords the many other prior justifications offered by Plaintiffs for their inadequate responses.  The correspondence from counsel

for Plaintiffs to the Court acknowledged the deficiencies in their conduct, and offered to get another lawyer to help because Plaintiffs "deserve more vigorous representation."  That was an option dangled several times by Plaintiffs, but never implemented.  Even in the face of this motion, Plaintiffs have not put forth a plan to complete discovery in a reasonable time frame.  The Court finds that the Plaintiffs' failure to comply with their discovery obligations and the Court's order was willful and not justified.

History of noncompliance:  This motion, the manifold communications by counsel for Defendant with counsel for Plaintiffs, and the several conferences the Court has convened to discuss discovery issues is the result of Plaintiffs' repeated noncompliance with its discovery obligations.  This factor weighs heavily in favor of the imposition of sanctions.

Effectiveness of lesser sanctions:  The Court has serious concerns about Plaintiffs' willingness and capacity to comply with their discovery obligations.  Over the course of many months, they have temporized again and again.  The Court has extended discovery multiple times as a result of asserted health concerns, granting Plaintiffs the amount of time that they requested in order to complete discovery.  But Plaintiffs have not complied with their own proposed extended deadlines.  And even presented with this motion, Plaintiffs have not presented a plan for the completion of discovery.  Plaintiffs' prosecution of this litigation leaves very much to be desired.

Nonetheless, at this point, the Court will not impose the most severe of sanctions—dismissal.  Lesser sanctions are available as a measured response to Plaintiffs' conduct.  This may well yet develop into one of the rare cases in which dismissal is warranted.  By choosing to impose a lesser sanction at this time, the Court has not exonerated Plaintiffs' conduct to this point.  Plaintiffs should take fair warning that if their prosecution of this case continues down the same meandering path, other sanctions, including the dismissal of this action, are possible.

Previous warnings about the possibility of sanctions:  The Court ordered Plaintiffs to respond to the discovery requests.  During the October 14, 2020 conference, the Court also

reminded Mr. Ratner of the significance of non-compliance with a Court order. However, the Court did not specifically warn Plaintiffs that dismissal was a potential sanction for failure to comply with their discovery obligations earlier in the litigation. As a result, this factor weighs against the imposition of the most severe sanctions available.

Prejudice to the moving party: Counsel for Plaintiffs argues that Defendant suffered no prejudice as a result of Plaintiffs' failure to comply with their discovery obligations. At the outset, a showing of prejudice is not necessary to support the entry of sanctions under Rule 37 as a result of Plaintiffs' failure to comply with the Court's discovery order. *See, e.g.*, *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, No. 03-cv-5562 (JGK)(AJP), 2005 WL 1958361, at *17 (S.D.N.Y. Aug. 16, 2005) (collecting cases). Moreover, Plaintiffs' position is clearly untrue. Apart from the other consequences of Plaintiffs' nonfeasance, Defendant has spent unnecessary legal fees chasing down information that should have been forthcoming. Yes, until now, Plaintiffs could perhaps justify their nonchalance regarding the prejudicial impact of their conduct on Defendant with the thought that Defendant, a bank, was only out money, and that its lawyer, after all, was being paid to chase after Plaintiffs. But being forced to spend money on work made necessary only by the misconduct of your adversary is prejudice. The Court's award of sanctions here may help Plaintiffs appreciate that fact.

Overall, these factors weigh heavily in favor of imposing sanctions for Plaintiffs' failure to comply with their discovery obligations. Plaintiffs' failure was not substantially justified; nor is there any other reason that would make the award of these sanctions unjust. However, the Court believes that a more lenient sanction than dismissal is appropriate at this time. Plaintiffs and their counsel must pay Defendant the reasonable fees and costs incurred by it in connection with this motion. Plaintiffs and their counsel must also pay the reasonable fees and costs incurred by Defendant in connection with each of the emails and other communications by counsel for Defendant seeking overdue documents from Plaintiffs following the September 18, 2020 deadline established by the

Court's order.  These costs are appropriately born jointly and severally by counsel for Plaintiffs and Plaintiffs themselves.  Plaintiffs' counsel appears to bear substantial responsibility for the delays. But the evidence presented also shows lack of communication and effort by Plaintiffs themselves. As a result, the Court will order that Plaintiffs and their counsel be jointly and severally liable for these costs.

In addition, the Court concludes that the Plaintiffs have waived any objections to Defendant's discovery requests.  Plaintiffs have not responded fully despite Court intervention. Plaintiffs have not completed their responses to Defendant's discovery requests, notwithstanding the Court's order that they be served no later than September 18, 2020.  There is no good cause for the continued delay in their responses.  Plaintiffs have waived their opportunity to object to the requests.

## IV.    CONCLUSION

Plaintiffs' motion for sanctions is granted in part and denied in part.  Plaintiffs must pay the reasonable costs and expenses Defendant incurred chasing after all of the discovery it was owed after the September 18, 2020 deadline ordered by the Court—namely, the reasonable costs and expenses Defendant's counsel incurred in writing emails to his adversary and letters to the Court, participating in meet and confers and Court-ordered conferences, and in making this motion.

Defendant is directed to submit a fee application documenting proof of its compensable fees and expenses no later than December 11, 2020.  Any response to the application by Plaintiffs is due no later than 7 days after the date of service of the application.

One final note:  these are the first sanctions the Court has imposed in this case, but they may not be the last.  If it becomes evident that Defendant must bear other direct costs and fees as a result of the same misconduct, or if additional steps are required to ensure Plaintiffs' compliance with their discovery obligations, the Court will determine whether it is appropriate to impose additional sanctions, which may include the dismissal of this action.

The Clerk of Court is directed to terminate the motion pending at docket number 66.

SO ORDERED.

Dated:  November 24, 2020

_____
GREGORY H. WOODS
United States District Judge