Via Pro-Se docket at: Temporary_Pro_Se_Filing@nysd.uscourts.gov (outside the ECF system)

Hon. Gregory H. Woods

United States District Court

500 Pearl Street
New York, New York 10007

February 22, 2021

Re: *Shnyra, et al. v. State Street Bank and Trust Co., Inc.*, Case No. 19-cv-02420 (GHW)

Dear Judge Woods:

Plaintiffs jointly and individually respectfully request Court guidance and a telephone conference in anticipation of further discovery disputes. The Plaintiffs would like the Court to note that they do not request any extensions to the Plaintiffs' discovery submission scheduled on March 1, 2021.

Following Fed. R. Civ. P. 37(a)(1), Plaintiffs made multiple attempts to meet and confer with Defendant's counsel. Such meet and confer requests aimed to reduce the number of disagreements and need for court interference on the ESI's specifics adopted by Defendant and Defendant's method for discovery production.

Following Court Order as of January 7, 2021 (docket #98), Plaintiffs reached out to submit their questions and produced formal objections to Defendant's search protocol by February 8, 2021. The following facts transpired during the interaction of the parties, highlighting deficiencies of the ESI protocol and methods adopted by the Defendant to produce the discovery and counsel misconduct and frivolous demands on the Plaintiff's discovery production:

Counsel misconduct:
Plaintiffs want the Court to note that to date, Defendant's counsel continues to decline Plaintiffs request to meet and confrere via telephone conference. As such, Defendant continues to insist on the written communication between the parties, leading to significant delays in exchanges and creating an unnecessary burden of cost and time to facilitate discussion of even the smallest matters of the case. Seven emails were exchanged between Defendant counsel and Plaintiffs on the topic to date, three explicit requests for telephone conference were declined by the Defendant at this time.

1

The Court should also be made aware that Defendant's counsel purposely and consistently delayed their responses to Plaintiffs. Such delays aimed to allow Plaintiffs de-facto no time to sufficiently review the correspondence during the regular business hours and outside of the religiously segregated hours of Shabbat observance.

As evidence to that, Defendant submitted a response to the Plaintiffs questions on the Defendant Discovery protocol at 5pm on Friday, February 5, 2021 (while Plaintiffs objections were due on Monday, February 8, 2021). Of note here is that the substantive response consisted of a copy of the contractual documentation paragraph between Defendant and its vendor and was available to Defendant all along, even before December 15, 2020, when Plaintiffs initially raised questions on Defendant's protocol. The need to disclose this limited document so late was motivated by nothing but a strategy to stonewall the Plaintiffs and prevent them from effectively identifying deficiencies within the Court's timeframes.

Despite the Defendant's counsel conduct, Plaintiffs filed their objections, as directed by the court order, on time, on February 8, 2021. The response to that was received only on February 17, 2021. Plaintiffs promptly followed with an email on February 18, 2021, indicating the need for a follow up meet and confer that was declined by the Defendant yet again.

During these interactions Defendant's counsel violated a number of ABA Model Rules of Professional Conduct (2020) – Rule 4.3 "The lawyer shall not give legal advice to an unrepresented person" and Model Rules 3.3(a)(1), 4.1(a), and 8.4(c) that collectively prohibit attorneys from misrepresenting any fact material to a matter in litigation.

Specifically, in his February 17th response to Plaintiff's objections, p. 4, Defendant counsel noted that: "…we would like to use this correspondence as an opportunity to remind you that your correspondence with your fellow Plaintiffs is not privileged. Accordingly, we expect that Plaintiffs' document production will include all correspondence amongst yourselves relating to the open issues in this litigation." The Defendant counsel is not only giving Plaintiffs guidance on the privileged status of the specific documents in Plaintiffs production of the discovery prior to the discovery, which is explicitly prohibited, they also misrepresent the Plaintiffs obligations.

Defendant must be well aware that the joint defense privilege, or common interest rule or doctrine, protects communications between parties who share a common interest in litigation. *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005). The joint defense privilege "presupposes the existence of an otherwise valid privilege, and the rule applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine." *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990). As follows further from the same documentation, Defendant acknowledges both, common interests of the Plaintiffs and existence of the valid privilege with their attorney by specifying the request for such communication in the privileged log.

The Fourth Circuit has held that the joint defense privilege extends to civil co-defendants, and not just with respect to communications among their lawyers. *See id.* (stating "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims"). *See Sheet Metal Workers Int'l Ass'n v. Sweeney*, 29 F.3d 120, 125 (4th Cir. 1994); *see also Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, 617 F. App'x 227, 243 (4th Cir. 2015).

2

Defendant counsel further proceeds with its scaring tactics by noting in its correspondence on February 18, 2021 that "Plaintiffs have waived their right to object to the production of *any* (emphasis added) documents requested by State Street" while the Court order as of November 27, 2020 (docket #75) clearly limits applicability of the sanctions to the Defendant's discovery requests submitted prior to the Court opinion, and does not warrant Defendant an opportunity to double jeopardize the proceedings of the case by claiming any of their future requests must be granted.

The Plaintiffs want the Court to note that Defendant did not serve them with updated interrogatories to date and as such waived their rights to further append interrogatories at this time.

While Defendant must be very well aware of its obligations and precedents that exist, their behavior is a continuation of disrespectful, non-collaborative approach Defendant's counsel has taken in the past, assigning themselves a liberty to assign Plaintiffs characteristics such as "sloth and recalcitrance" as was noted in the past, and liberally interpret their own timelines on discovery production, citing their misunderstanding of the obligation in view of the delay with Plaintiffs discovery production, as was previously noted by the Court at telephone conference on December 7, 2020.

The Plaintiffs ask the Court to guard against such misconduct with appropriate measures the Court respectfully sees appropriate under the circumstances.

<u>Deficiencies identified in Defendant's approach to discovery and methods to produce discovery:</u>
Plaintiffs have issued a detailed list of objections and received Defendant's response to these objections. The below summarizes the list of critical deficiencies and points of disagreement that Plaintiffs anticipate the need for court interference.

*Limitations on Production - Number of Custodians and Identity of Custodians:*
As follows from Defendant's counsel's email of February 5, 2021, counsel has failed to establish sufficient familiarity with the complaint and joint order on damages given specific Title VII violation counts (docket # 1 as of 03/08/2019 and docket # 44 as of 05/14/2020).   The counsels for Defendant did not identify associated actors directly relevant to these counts. They failed to establish appropriate and timely adequate reporting structure and relationships within the organization during their Defendant interview.  Besides the Plaintiffs' emails, Defendant searched emails of Brenda Curran, Dana Hopkinson, Erin Toomey, J.R. Lowry, and John Plansky. Such search was deemed inadequate in scope and substance on the following grounds:

As follows from the Plaintiffs' original complaint, Counts I – IX include, amongst others statures, count on unequal compensation, failure to promote, willful creation of roadblocks to career advancement that occurred throughout the tenure of Dr. Shnyra and Mr. Reyngold.

For most of the tenure of both Dr. Shnyra and Mr. Reyngold, their direct supervisor was Dr. Jessica Donohue (Head of SSGX Advisory and Innovation), with the next line supervisor being Mr. Lou Maiuri (Head of SSGX at the time). Both of these senior executives continued to be directly involved in day-to-day activities with ERAS even after Mr. Lowry and Mr. Plansky succeeded them in January of 2017. Their involvement is evidenced by multiple written correspondence between the executives and the Plaintiffs throughout 2017 and numerous in-person meetings.

Under Dr. Donohue and Mr. Maiuri's leadership, such unequal compensation, failure to promote, and the creation of willful roadblocks to Dr. Shnyra and Mr. Reyngold's career advancement flourished and continued years before reaching its ultimate and tragic culmination once Messrs. Lowry and Plansky took office.

In addition to failure to include relevant senior executives, Defendant had excluded from its search emails of the specialists directly relevant to these counts.

Ben Rogers, compensation specialist that performed the review of the compensation for ERAS and uncovered that Dr. Shnyra was at the lowest band of the compensation structure, was excluded from Defendant's eDiscovery.

Ms. Joy Murray – HR specialist who personally interviewed both Dr. Shnyra and Mr. Reyngold about Dr. Shnyra's discrimination complaint about Dana Hopkinson, not surprisingly was missing from the list of the key actors in Defendant's eDiscovery.

HR specialists that were directly responsible for the RIF initiative, creation of the fictitious and never observed before business units, and a multitude of critical mistakes made in the summary plan for the reduction of force initiative (including even changing the layoff rationale) were not searched by the Defendant. Plaintiffs are able to identify Clare Foley as one of the specialists involved, but not able to currently identify the other two HR specialists that handled in-person discussions on the first day of RIF announcements (which, however, should be tracked by the Defendant).

Promotion committee specialists, mentioned by Dr. Donohue and Mr. Plansky several times (without the disclosure of actual actors) responsible for the review and stalling of Dr. Shnyra and Mr. Reyngold candidacy for promotion were neither identified nor included by Defendant.

Defendant deliberately excluded from eDiscovery a group of SSGM executives responsible for deliberate harassments and attempt to retain all of the ERAS employees under 40 years old, including Mr. Bouchard, Mr. Arshad, and Ms. Flynn.

Defendant deliberately excluded from eDiscovery emails of the ERAS employees Weizhe Tao and Yunqing Hu. They stayed with SSGX past RIF termination despite being part of the same RIF as Plaintiffs. They continued to function in the same role. As evidenced by the very fact of their continued employment, RIF was motivated by other reasons than the ones presented by Defendant.

Once Plaintiffs provided the above mentioned objections to Defendant, they indicated that "State Street avers that it expects to conduct a manual collection of responsive materials from the following custodians identified in your objections: Lou Maiuri, Jessica Donohue, PhD, Waseem Arshad, Patricia Flynn, Chris Bouchard and Joy Murray."

The Plaintiffs want the Court to note that Defendant declined to include Ben Rogers, compensation specialists performing compensation review for Dr. Shnyra, Claire Foley – HR specialists responsible for so-called mistakes in the reduction in force initiative rationale and benefits summary calculations. Defendant misidentified Mr. Daniel Bouchard as Chris Bouchard. The Defendant also continues to deny identifying mysterious "additional custodians" that they would only know once eDiscovery is completed, as indicated on p. 2 of their response to Plaintiff's objections. Defendant declined to include Messrs. Tao and Hu in their discovery search. They also decline to identify

4

promotion committee specialists responsible for stalling the promotion of Dr. Shnyra in 2015 and moving forward with a male candidate Mr. Shota Ishii, and the same committee specialists accountable for stalling the promotion of Mr. Reyngold over several years of his tenure. Plaintiffs object to such an incomplete list of custodians. No specific reasons were provided by the Defendant to substantiate exclusion of these relevant key actors from the discovery.

*Disparate treatment of the custodians in discovery search:*
Plaintiffs wanted the court to know that while Defendant agreed to somewhat modify the custodian list, they provided no rationale as to why the discovery methods conducted should vary significantly across the custodians. In their response, it seems that Defendant attempts nothing short of redefining the Schrodinger's cat paradox multiple times.

On one hand, they claim that AI and Machine learning are proportionate to the needs of the case because of the large volume of emails from the custodians. On the other hand, it is only if the list of custodians does not include anyone besides Brenda Curran, Dana Hopkinson, Erin Toomey, J.R. Lowry, and John Plansky.

Search for Lou Maiuri, Jessica Donohue, PhD, Waseem Arshad, Patricia Flynn, Daniel Bouchard, and Joy Murray should be done manually. Defendant indicates that this approach is again proportionate to the case's needs even though these actors were significantly longer in their roles and are expected to possess a much larger body of responsive emails.

Defendant further proceeds with claims that eDiscovery is "highly efficient" but only if it covers a selective group of executives that are convenient to Defendant's claims, and stops being so the minute additional actors need to be added, and there they need to switch to manual search. If anything, this indicates the instability of the search algorithm used by the Defendant and is critical reliance on a non-objective set of characteristics that cannot be easily transferred outside of the initial pool of search.

Defendant claims that "Given the nature of this search, it is obviously impractical (and unwarranted) to conduct a comprehensive eDiscovery search for each and every person identified in the complaint" contrary to the common notion that eDiscovery search is used by the parties to notoriously save on the discovery cost and shorten the timelines. If anything, it is impractical to have a combination of two different search approaches, one of which is manual and over a significantly more extended period.

Defendant further claims that Plaintiff is incorrect in assuming that Defendant will only search emails, yet at the same time provides no details as to what other systems and locations will be searched.

Last but not least, Defendant claims that it is unwarranted and premature for the Plaintiffs to worry about their ability to conduct a quality manual search in less than one month before the discovery submission. This is an entirely unique objection because in the same document Defendant claimed that "over 900,000 documents have been processed by Open Text as a part of its review" for the initial body of custodians identified. Having to review at least the same amount of documentation manually for additional custodians within such a short period would be a very significant burden to overcome. While little attention was given to Defendant's submission in the past, the fact is that Defendant failed to produce their respective discovery on schedule. And while Plaintiff's attorney

5

had at least reasonable grounds to cite his medical history, Defendant's delays were motivated by nothing but either their inability to produce the delivery or deliberate misreading of the Court order. It is evident that Defendant was expecting that Mr. Ratner will "return the courtesy" of extending the timelines when Defendant needs to produce its discovery based on the correspondence between Mr. Ratner and Defendant.

Putting Schrodinger's paradox to shame, Defendant indeed seems to be in a unique position. They have a unique algorithm for discovery that is simultaneously proportionate and disproportionate to the case's needs, highly efficient, and yet not practical. They also claim there are no reasons for Plaintiffs to worry, yet will have another million emails for manually review in the next four weeks, if they indeed intend to perform a quality manual search. Plaintiffs believe that counsel's actions deliberately and willfully result in a defective search that will, without a doubt, result in the loss of evidence and will force the Plaintiffs to docket a motion to compel and, as follows, may lay a predicate for sanction motion.

In view of the foregoing, Plaintiffs respectfully request Court guidance and kindly ask for a telephone conference on a the above issues as this Court may deem proper under the circumstances.

Respectfully submitted,

_____
Ksenia Shnyra

_____
Alexander Reyngold

_____
Kenneth Walker

cc: All counsel of record